## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MERRILL LYNCH BUSINESS**<br>**FINANCIAL SERVICES INC.**<br>**222 North LaSalle Street, 17th Floor**<br>**Chicago, IL 60601**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**EXECUTIVE PERSONNEL SERVICES, INC.**<br>**1015 18th Street NW**<br>**Suite 710**<br>**Washington, DC 20036**<br><br>      **and**<br><br>**GERALD M. SHEALEY**<br>**504 Scenic Way**<br>**Great Falls, VA 22066**<br><br>      **Defendants.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Civil Action No. 1:07-cv-02100** |

## AMENDED VERIFIED COMPLAINT

Plaintiff, Merrill Lynch Commercial Finance Corporation, as the assignee of the interest of Merrill Lynch Business Financial Services Inc. ("Plaintiff"), by its undersigned attorneys, hereby files this Amended Verified Complaint pursuant to Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure against Defendants Executive Personnel Services, Inc. ("EPSI") and Gerald M. Shealey ("Shealey") (collectively, the "Defendants"). In support hereof, Plaintiff states the following:

**PARTIES**

1.      Plaintiff is a financial services corporation organized under the laws of the State of Delaware.  Plaintiff's principal place of business is in Chicago, Illinois.

2.      On information and belief, EPSI is a corporation organized under the laws of the District of Columbia.   On information and belief, EPSI's principal place of business is the District of Columbia.

3.      On information and belief, Shealey is an adult individual who is a citizen and domiciliary of the Commonwealth of Virginia.

**JURISDICTION AND VENUE**

4.      Jurisdiction is proper under 28 U.S.C. § 1332 because the action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      Venue is proper under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this jurisdiction and a substantial part of the property that is the subject of the action is situated in this jurisdiction.

6.      Shealey has consented to jurisdiction and venue in which any of the guaranteed documents listed in the Unconditional Guaranty dated June 23, 1998 (the "Guaranty") may be enforced.

**GENERAL ALLEGATIONS**

7.      On or around June 23, 1998, Plaintiff and EPSI entered into the WCMA and Term Loan and Security Agreement No. 9806660201 (the "Loan and Security Agreement").  The Loan and Security Agreement states that it shall be governed by the laws of the State of Illinois.

8.      Under the Loan and Security Agreement, Plaintiff extended to EPSI a line of credit in the amount of $300,000.00 with an initial Maturity Date of June 30, 1999 (the WCMA Line of Credit), which is further evidenced by the WCMA Line of Credit Note (the "WCMA Note") found in Article III of the Loan and Security Agreement. The Loan and Security Agreement was amended by letter dated July 7, 1999, which extended the Maturity Date to June 30, 2000; by letter dated October 15, 1999, which increased the line of credit to $500,000.00; by letter dated June 29, 2000, which extended the Maturity Date to July 31, 2000; by letter dated July 26, 2000, which extended the Maturity Date to August 31, 2000; by letter dated August 25, 2000, which increased the line of credit to $700,000.00 and extended the Maturity Date to June 30, 2001; by letter dated June 27, 2001, which extended the Maturity Date to July 31, 2001; by letter dated July 31, 2001, which extended the Maturity Date to August 31, 2001; by letter dated August 28, 2001, which extended the Maturity Date to June 30, 2002; by letter dated September 26, 2002, which extended the Maturity Date to June 30, 2003; by letter dated December 17, 2003, which extended the Maturity Date to December 31, 2004, and increased the line of credit to $900,000.00; by letter dated December 30, 2004, which extended the Maturity Date to December 31, 2005; by letter dated January 9, 2006, which extended the Maturity Date to January 31, 2006; and by letter dated March 2, 2006, which extended the Maturity Date to March 31, 2006. Subsequently, and in order to allow additional time for EPSI to prepare financial information, the Maturity Date was extended to April 30, 2006. A true and correct copy of the Loan and Security Agreement and amendments is attached as Exhibit A.

9.      Pursuant to Paragraph 4.4 of the Loan and Security Agreement, the WCMA Note and WCMA Line of Credit is secured by EPSI's pledge of certain collateral to Plaintiff, granting Plaintiff first liens and security interests in and upon all of the certain collateral as defined

therein. "Collateral," as defined by the Loan and Security Agreement, includes all "Accounts, Chattel Paper, Contract Rights, General Intangibles, Deposit Accounts, Documents and Instruments of [EPSI], whether now owned or existing or hereafter acquired or arising, and wherever located; together with books and records (including computer records) in any way related thereto, all proceeds thereof," and includes any "cash, credit, deposits, accounts, securities and any other property of Customer which is in transit to or in the possession, custody or control of [Plaintiff or any of Plaintiff's agents or affiliates], including, without limitation, the WCMA Account and any Money Accounts, and all cash, securities and other financial assets therein or controlled thereby, and all proceeds thereof." *See* Loan and Security Agreement ¶¶ 1.1(g), 4.6(b).

10.    Pursuant to the terms of the Guaranty, Shealey unconditionally guaranteed to Plaintiff the timely payment and performance of all liabilities and obligations of EPSI to Plaintiff, including, but not limited to, all obligations under the Loan and Security Agreement and the WCMA Note. The Guaranty states that it shall be governed by the laws of the State of Illinois. A true and correct copy of the Guaranty is attached hereto as <u>Exhibit B</u>.

11.    EPSI is in default of its obligations under the Loan and Security Agreement and the WCMA Note by, *inter alia*, failing to pay Plaintiff amounts owed under the WCMA Note and the Loan and Security Agreement and by failing to produce certain financial information required under the Loan and Security Agreement.

12.    Shealey has defaulted on his obligations under the Guaranty by, *inter alia*, failing to pay Plaintiff amounts owed under the Loan and Security Agreement and the WCMA Note after EPSI defaulted on its obligations.

13.    In a letter dated February 28, 2006 ("Financial Reporting Default Letter"), Plaintiff notified EPSI of its failure to comply with the reporting obligations in the Loan and Security Agreement, made demand and accelerated all obligations under the WCMA Note, and the Loan and Security Agreement, therefore making all such obligations due and payable. A true and correct copy of the Financial Reporting Default Letter is attached as <u>Exhibit C</u>.

14.    In a letter dated June 12, 2006 ("Monetary Default Letter"), Plaintiff notified Defendants of its outstanding indebtedness under the WCMA Note, the Loan and Security Agreement and the Guaranty and, to the extent necessary, made demand and accelerated all obligations under the WCMA Note, the Loan and Security Agreement, and the Guaranty, therefore making all such obligations due and payable. A true and correct copy of the Monetary Default Letter is attached as <u>Exhibit D</u>.

15.    Pursuant to the terms of the Loan and Security Agreement, the WCMA Note, and the Guaranty, EPSI and Shealey are jointly and severally obligated to pay the attorneys' fees and expenses incurred by Plaintiff in enforcing its rights.

16.    As of January 18, 2008, the balance due and owing under the WCMA Note is $786,293.99, plus attorneys' fees and expenses, and all other fees and expenses that are owed under the Loan and Security Agreement. As of January 18, 2008, interest is accruing on the principal balance of the loan at a per diem rate of $151.07, which per diem is subject to fluctuation in accordance with the Loan and Security Agreement.

17.    Despite repeated demands, the Defendants have failed and/or refused to pay the balances due under the WCMA Note, the Loan and Security Agreement and the Guaranty.

## <u>COUNT I – BREACH OF WCMA NOTE (AGAINST EPSI)</u>

18.    Paragraphs 1 through 17 are incorporated by reference into this Count as if fully set forth herein.

19.    EPSI is in default of its obligations to Plaintiff under the WCMA Note.

20.    Plaintiff has performed all conditions and covenants, if any, required under the WCMA Note and the Loan and Security Agreement.

21.    As of January 18, 2008, the balance due and owing under the WCMA Note is $786,293.99, plus attorneys' fees and expenses, and all other fees and expenses that are owed under the Loan and Security Agreement, and continued accrued interest.

WHEREFORE, Plaintiff requests that this Court:

(a)    Enter judgment in favor of Plaintiff and against EPSI in the amount of $786,293.99, together with pre-judgment interest, attorneys' fees and costs of suit; and

(b)    Grant such other and further relief as is just and appropriate under the circumstances.

## COUNT II – BREACH OF GUARANTY (AGAINST SHEALEY)

22.    Paragraphs 1 through 21 are incorporated by reference into this Count as if fully set forth herein.

23.    Shealey has defaulted on his obligations to Plaintiff under the Guaranty.

24.    Plaintiff has performed all conditions and covenants, if any, required under the Guaranty.

25.    As of January 18, 2008, the balance due and owing under the Guaranty is $786,293.99, plus attorneys' fees and expenses, and all other fees and expenses that are owed under the Loan and Security Agreement, and continued accrued interest.

WHEREFORE, Plaintiff requests that this Court:

(a)    Enter judgment in favor of Plaintiff and against Shealey, in the amount of $786,293.99, together with pre-judgment interest, attorneys' fees and costs of suit; and

(b)    Grant such other and further relief as is just and appropriate under the circumstances.

## COUNT III – ENFORCEMENT OF LOAN AND SECURITY AGREEMENT (AGAINST EPSI)

26.    Paragraphs 1 through 25 are incorporated by reference into this Count as if fully set forth herein.

27.    On or about June 23, 1998, Plaintiff and EPSI entered into the Loan and Security Agreement.

28.    Among other terms of the Loan and Security Agreement, Plaintiff was granted a security interest in Collateral, as detailed above in Paragraph 9.

29.    Plaintiff's security interest in the aforesaid Collateral was duly perfected. A true and correct copy of the financing statement is attached hereto as Exhibit E.

30.    Plaintiff has performed all conditions, covenants and promises required to be performed in accordance with the terms and conditions of the Loan and Security Agreement and is therefore entitled to foreclose on said Collateral due to the aforementioned defaults of EPSI.

31.    In the event of default, Plaintiff may avail itself of any of the remedies available under Paragraph 4.6 of the Loan and Security Agreement. Under Paragraph 4.6(iv) of the Loan and Security Agreement, in the event of default by EPSI, Plaintiff may require EPSI to make the Collateral available to Plaintiff or Plaintiff's designated representative at a place designated by Plaintiff, and Plaintiff may take possession of the Collateral without the use of any judicial process and without prior notice to EPSI.

32.    Under Paragraph 4.6(iv) of the Loan and Security Agreement, in the event of default by EPSI, Plaintiff may require EPSI to make the records pertaining to the Collateral available to Plaintiff or Plaintiff's designated representative at a place designated by Plaintiff, and Plaintiff may take possession of the records pertaining to the Collateral without the use of any judicial process and without prior notice to EPSI.

33.    To permit a public or private sale of the Collateral and to maximize the value of the Collateral, EPSI should be compelled to turn over the Collateral and assist with Plaintiff's efforts to sell the Collateral.

WHEREFORE, Plaintiff requests that this Court:

(a)    Order EPSI to preserve and to deliver the Collateral as appropriate so as to cooperate with Plaintiff's efforts to sell the Collateral in accordance with the Loan and Security Agreement and the Uniform Commercial Code;

(b)    Order EPSI to make the Collateral and records pertinent to the Collateral available to Plaintiff or Plaintiff's designated representative at a place designated by Plaintiff; and

(c)    Grant such other and further relief as is just and appropriate under the circumstances.

Date: January 18, 2008                                   Respectfully submitted,

Daniel Carrigan, D.C. Bar No. 452073
John G. McJunkin, D.C. Bar No. 420223
DLA Piper US LLP
1775 Wiehle Avenue, Suite 400
Reston, VA  20190
(703) 773-4152   Telephone
(202) 689-5034   Facsimile
Attorneys for Plaintiff

**Verification**

I, Raymond Abbott, Vice President, am duly authorized to make this Verification and declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief at the time of filing. Executed on January _18_, 2008.


_Raymond P Abbott_
Raymond Abbott
Vice President
Merrill Lynch Commercial Finance Corp., as the
assignee of the interest of Merrill Lynch Business
Financial Services Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of January, 2008, a true and correct copy of the foregoing Plaintiff's Amended Verified Complaint was sent by electronic mail and by first-class U.S. mail, postage prepaid to:

Bruce Henry, Esq.
Henry, O'Donnell, Dahnke & Walther, P.C.
4103 Chain Bridge Road
Suite 100
Fairfax, Virginia  22030

_____
John G. McJunkin

# Exhibit A

**Merrill Lynch**

No. 9806660201

# WCMA* AND TERM LOAN AND SECURITY AGREEMENT

**WCMA AND TERM LOAN AND SECURITY AGREEMENT NO. 9806660201** ("Loan Agreement") dated as of June 23, 1998, between **EXECUTIVE PERSONNEL SERVICES, INC.**, a corporation organized and existing under the laws of the District of Columbia having its principal office at 1990 M Street, N.W., Suite 480, Washington, DC 20036 ("Customer"), and **MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.**, a corporation organized and existing under the laws of the State of Delaware having its principal office at 33 West Monroe Street, Chicago, IL 60603 ("MLBFS").

In accordance with that certain **WORKING CAPITAL MANAGEMENT* ACCOUNT AGREEMENT NO. 749-07U96** ("WCMA Agreement") between Customer and MLBFS' affiliate, **MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED** ("MLPF&S"), Customer has subscribed to the WCMA Program described in the WCMA Agreement. The WCMA Agreement is by this reference incorporated as a part hereof. In conjunction therewith, and as part of the WCMA Program, Customer has requested that MLBFS provide Customer with a commercial line of credit upon the terms hereinafter described (the "WCMA Line of Credit"). Customer has further requested that MLBFS make the 4-year term loan hereinafter described (the "Term Loan"). Subject to the terms and conditions hereinafter set forth, MLBFS has agreed to provide the WCMA Line of Credit and make the Term Loan.

Accordingly, and in consideration of the premises and of the mutual covenants of the parties hereto, Customer and MLBFS hereby agree as follows:

## Article I. DEFINITIONS

**1.1 Specific Terms.** In addition to terms defined elsewhere in this Loan Agreement, when used herein the following terms shall have the following meanings:

(a) "Account Debtor" shall mean any party who is or may become obligated with respect to an Account or Chattel Paper.

(b) "Activation Date" shall mean the date upon which MLBFS shall cause the WCMA Line of Credit to be fully activated under MLPF&S' computer system as part of the WCMA Program.

(c) "Additional Agreements" shall mean all agreements, instruments, documents and opinions other than this Loan Agreement, whether with or from Customer or any other party, which are contemplated hereby or otherwise reasonably required by MLBFS in connection herewith, or which evidence the creation, guaranty or collateralization of any of the Obligations or the granting or perfection of liens or security interests upon the Collateral or any other collateral for the Obligations, and shall include, without limitation, the Term Note.

(d) "Bankruptcy Event" shall mean any of the following: (i) a proceeding under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt or receivership law or statute shall be filed or consented to by Customer or any Guarantor; or (ii) any such proceeding shall be filed against Customer or any Guarantor and shall not be dismissed or withdrawn within sixty (60) days after filing; or (iii) Customer or any Guarantor shall make a general assignment for the benefit of creditors; or (iv) Customer or any Guarantor shall generally fail to pay or admit in writing its inability to pay its debts as they become due; or (v) Customer or any Guarantor shall be adjudicated a bankrupt or insolvent.

(e) "Business Day" shall mean any day other than a Saturday, Sunday, federal holiday or other day on which the New York Stock Exchange is regularly closed.

(f) "Closing Date" shall mean the date upon which all conditions precedent to MLBFS' obligation to make the Term Loan shall have been met to the satisfaction of MLBFS.



(g) "Collateral" shall mean all Accounts, Chattel Paper, Contract Rights, General Intangibles, Deposit Accounts, Documents and Instruments of Customer, howsoever arising, whether now owned or existing or hereafter acquired or arising, and wherever located; together with all books and records (including computer records) in any way related thereto, all proceeds thereof, and the additional collateral described in Section 4.6 (b) hereof.

(h) "Commitment Expiration Date" shall mean July 23, 1998.

(i) "Default" shall mean an "Event of Default" as defined in Section 4.5 hereof, or an event which with the giving of notice, passage of time, or both, would constitute such an Event of Default.

(j) "General Funding Conditions" shall mean each of the following conditions to any loan or advance by MLBFS hereunder: (i) no Default shall have occurred and be continuing or would result from the making of any such loan or advance hereunder by MLBFS; (ii) there shall not have occurred and be continuing any material adverse change in the business or financial condition of Customer or any Guarantor; (iii) all representations and warranties of Customer or any Guarantor herein or in any Additional Agreements shall then be true and correct in all material respects; (iv) MLBFS shall have received this Loan Agreement, the Term Note and all other Additional Agreements, duly executed and filed or recorded where applicable, all of which shall be in form and substance reasonably satisfactory to MLBFS; (v) with respect to the Term Loan, MLBFS shall have received, as and to the extent applicable, copies of invoices, bills of sale, loan payoff letters and/or other evidence reasonably satisfactory to it that the proceeds of the Term Loan will satisfy the Term Loan Purpose; (vi) MLBFS shall have received evidence reasonably satisfactory to it as to the ownership of the Collateral and the perfection and priority of MLBFS' liens and security interests thereon, as well as the ownership of and the perfection and priority of MLBFS' liens and security interests on any other collateral for the Obligations furnished pursuant to any of the Additional Agreements; and (vii) any additional conditions specified in the "WCMA Line of Credit and Term Loan Approval" letter executed by MLBFS with respect to the transactions contemplated hereby shall have been met to the reasonable satisfaction of MLBFS.

(k) "Guarantor" shall mean a person or entity who has either guaranteed or provided collateral for any or all of the Obligations.

(l) "Initial Maturity Date" shall mean the first date upon which the WCMA Line of Credit will expire (subject to renewal in accordance with the terms hereof); to wit: June 30, 1999.

(m) "Interest Due Date" shall mean, with respect the WCMA Line of Credit, the last Business Day of each calendar month during the term hereof (or, if Customer makes special arrangements with MLPF&S, the last Friday of each calendar month during the term hereof).

(n) "Interest Rate" shall mean, with respect the WCMA Line of Credit, a variable per annum rate of interest equal to the sum of (i) 3.45% and (ii) the 30-Day Commercial Paper Rate. The "30-Day Commercial Paper Rate" shall mean, as of the date of any determination, the interest rate from time to time published in the "Money Rates" section of *The Wall Street Journal* for 30-day high-grade unsecured notes sold through dealers by major corporations. The Interest Rate will change as of the date of publication in *The Wall Street Journal* of a 30-Day Commercial Paper Rate that is different from that published on the preceding Business Day. In the event that *The Wall Street Journal* shall, for any reason, fail or cease to publish the 30-Day Commercial Paper Rate, MLBFS will choose a reasonably comparable index or source to use as the basis for the Interest Rate. The Interest Rate on the Term Loan is set forth or defined in the Term Note.

(o) "Line Fee" shall mean the fee of $1,500.00 payable periodically by Customer to MLBFS in connection with the WCMA Line of Credit, as provided herein.

(p) " Maturity Date" shall mean the date of expiration of the WCMA Line of Credit.

(q) "Maximum WCMA Line of Credit" shall mean $300,000.00.



(r) "Obligations" shall mean all liabilities, indebtedness and other obligations of Customer to MLBFS, howsoever created, arising or evidenced, whether now existing or hereafter arising, whether direct or indirect, absolute or contingent, due or to become due, primary or secondary or joint or several, and, without limiting the foregoing, shall include interest accruing after the filing of any petition in bankruptcy, and all present and future liabilities, indebtedness and obligations of Customer under this Loan Agreement, the WCMA Note included herein and the Term Note.

(s) "Permitted Liens" shall mean with respect to the Collateral: (i) liens for current taxes not delinquent, other non-consensual liens arising in the ordinary course of business for sums not due, and, if MLBFS' rights to and interest in the Collateral are not materially and adversely affected thereby, any such liens for taxes or other non-consensual liens arising in the ordinary course of business being contested in good faith by appropriate proceedings; (ii) liens in favor of MLBFS; (iii) liens which will be discharged with the proceeds of the initial WCMA Loan or the Term Loan; and (iv) any other liens expressly permitted in writing by MLBFS.

(t) "Renewal Year" shall mean and refer to the 12-month period immediately following the Initial Maturity Date and each 12-month period thereafter.

(u) "Term Loan Amount" shall mean an amount equal to the lesser of: (i) 100% of the amount required by Customer to satisfy or fulfill the Term Loan Purpose, or (ii) $120,000.00.

(v) "Term Loan Commitment Fee" shall mean the fee of $900.00 due to MLBFS in connection with and as partial consideration for the commitment by MLBFS under this Loan Agreement to make the Term Loan.

(w) "Term Loan Purpose" shall mean the purpose for which the proceeds of the Term Loan will be used; to wit: to payoff Customer's existing SBA loan with Nations Bank.

(x) "WCMA Account" shall mean and refer to the Working Capital Management Account of Customer with MLPF&S identified as WCMA Account No. 749-07U96 and any successor WCMA account.

(y) "WCMA Loan" shall mean each advance made by MLBFS pursuant to the WCMA Line of Credit.

(z) "WCMA Loan Balance" shall mean an amount equal the aggregate unpaid principal amount of all WCMA Loans.

1.2 Other Terms. Except as otherwise defined herein: (i) all terms used in this Loan Agreement which are defined in the Uniform Commercial Code of Illinois ("UCC") shall have the meanings set forth in the UCC, and (ii) capitalized terms used herein which are defined in the WCMA Agreement shall have the meanings set forth in the WCMA Agreement.

## Article II. THE TERM LOAN

2.1 Term Loan Commitment. Subject to the terms and conditions hereof, MLBFS hereby agrees to make the Term Loan to Customer for the Term Loan Purpose, and Customer agrees to borrow all amounts borrowed to satisfy the Term Loan Purpose from MLBFS. The entire proceeds of the Term Loan shall be disbursed on the Closing Date either directly to the applicable third party or parties on account of the Term Loan Purpose or to reimburse Customer for amounts directly expended by it; all as directed by Customer in a Closing Certificate to be executed by Customer and delivered to MLBFS prior to the Closing Date.

2.2 Term Note. The Term Loan shall be evidenced by and repayable in accordance with that certain Collateral Installment Note made by Customer payable to the order of MLBFS and issued pursuant to this Loan Agreement (the "Term Note"). The Term Note is hereby incorporated as a part hereof as if fully set forth herein.

2.3 Conditions of MLBFS' Obligation. The Closing Date and MLBFS' obligation to make the Term Loan on the Closing Date are subject to the prior fulfillment of each of the following conditions: (a) MLBFS shall have received a written request from Customer that the Term Loan be funded in accordance with the terms hereof,

together with a written direction from Customer as to the method of payment and payee(s) of the proceeds of the Term Loan, which request and direction shall have been received by MLBFS not less than two Business Days prior to any requested funding date; (b) MLBFS shall have received a copy of invoices, bills of sale, payoff letters or other applicable evidence reasonably satisfactory to it that the proceeds of the Term Loan will satisfy the Term Loan Purpose; (c) the Commitment Fee shall have been paid in full; (d) the Commitment Expiration Date shall not then have occurred; and (e) each of the General Funding Conditions shall then have been met or satisfied to the reasonable satisfaction of MLBFS.

**2.4 Term Loan Commitment Fee.** In consideration of the agreement by MLBFS to make the Term Loan to Customer in accordance with and subject to the terms hereof, Customer has paid or shall, on or before the Closing Date pay, the Term Loan Commitment Fee to MLBFS. Customer acknowledges and agrees that the Term Loan Commitment Fee has been fully earned by MLBFS, and that it will not under any circumstances be refundable.

### Article III. THE WCMA LINE OF CREDIT

**3.1 WCMA Promissory Note.**

FOR VALUE RECEIVED, Customer hereby promises to pay to the order of MLBFS, at the times and in the manner set forth in this Loan Agreement, or in such other manner and at such place as MLBFS may hereafter designate in writing, the following: (a) on the Maturity Date, or if earlier, on the date of termination of the WCMA Line of Credit, the WCMA Loan Balance; (b) interest at the Interest Rate on the outstanding WCMA Loan Balance, from and including the date on which the initial WCMA Loan is made until the date of payment of all WCMA Loans in full; and (c) on demand, all other sums payable pursuant to this Loan Agreement, including, but not limited to, the periodic Line Fee and any late charges. Except as otherwise expressly set forth herein, Customer hereby waives presentment, demand for payment, protest and notice of protest, notice of dishonor, notice of acceleration, notice of intent to accelerate and all other notices and formalities in connection with this WCMA Promissory Note ("WCMA Note") and this Loan Agreement.

**3.2 WCMA Loans.**

**(a) Activation Date.** Provided that: (i) the Commitment Expiration Date shall not then have occurred, and (ii) Customer shall have subscribed to the WCMA Program and its subscription to the WCMA Program shall then be in effect, the Activation Date shall occur on or promptly after the date, following the acceptance of this Loan Agreement by MLBFS at its office in Chicago, Illinois, upon which each of the General Funding Conditions shall have been met or satisfied to the reasonable satisfaction of MLBFS. No activation by MLBFS of the WCMA Line of Credit for a nominal amount shall be deemed evidence of the satisfaction of any of the conditions herein set forth, or a waiver of any of the terms or conditions hereof. Customer hereby authorizes MLBFS to pay out of and charge to Customer's WCMA Account on the Activation Date any and all amounts necessary to fully pay off any bank or other financial institution having a lien upon any of the Collateral other than a Permitted Lien.

**(b) WCMA Loans.** Subject to the terms and conditions hereof, during the period from and after the Activation Date to the first to occur of the Maturity Date or the date of termination of the WMCA Line of Credit pursuant to the terms hereof, and in addition to WCMA Loans automatically made to pay accrued interest, as hereafter provided: (i) MLBFS will make WCMA Loans to Customer in such amounts as Customer may from time to time request in accordance with the terms hereof, up to an aggregate outstanding amount not to exceed the Maximum WCMA Line of Credit, and (ii) Customer may repay any WCMA Loans in whole or in part at any time without premium or penalty, and request a re-borrowing of amounts repaid on a revolving basis. Customer may request WCMA Loans by use of WCMA Checks, FTS, Visa® charges, wire transfers, or such other means of access to the WCMA Line of Credit as may be permitted by MLBFS from time to time; it being understood that so long as the WCMA Line of Credit shall be in effect, any charge or debit to the WCMA Account which but for the WCMA Line of Credit would under the terms of the WCMA Agreement result in an overdraft, shall be deemed a request by Customer for a WCMA Loan.



**(c) Conditions of WCMA Loans.** Notwithstanding the foregoing, MLBFS shall not be obligated to make any WCMA Loan, and may without notice refuse to honor any such request by Customer, if at the time of receipt by MLBFS of Customer's request: (i) the making of such WCMA Loan would cause the Maximum WCMA Line of Credit to be exceeded; or (ii) the Maturity Date shall have occurred, or the WCMA Line of Credit shall have otherwise been terminated in accordance with the terms hereof; or (iii) Customer's subscription to the WCMA Program shall have been terminated; or (iv) an event shall have occurred and be continuing which shall have caused any of the General Funding Conditions to not then be met or satisfied to the reasonable satisfaction of MLBFS. The making by MLBFS of any WCMA Loan at a time when any one or more of said conditions shall not have been met shall not in any event be construed as a waiver of said condition or conditions or of any Default, and shall not prevent MLBFS at any time thereafter while any condition shall not have been met from refusing to honor any request by Customer for a WCMA Loan.

**(d) Limitation of Liability.** MLBFS shall not be responsible, and shall have no liability to Customer or any other party, for any delay or failure of MLBFS to honor any request of Customer for a WCMA Loan or any other act or omission of MLBFS, MLPF&S or any of their affiliates due to or resulting from any system failure, error or delay in posting or other clerical error, loss of power, fire, Act of God or other cause beyond the reasonable control of MLBFS, MLPF&S or any of their affiliates unless directly arising out of the willful wrongful act or active gross negligence of MLBFS. In no event shall MLBFS be liable to Customer or any other party for any incidental or consequential damages arising from any act or omission by MLBFS, MLPF&S or any of their affiliates in connection with the WCMA Line of Credit or this Loan Agreement.

**(e) Interest.** (i) An amount equal to accrued interest on the WCMA Loan Balance shall be payable by Customer monthly on each Interest Due Date, commencing with the Interest Due Date occurring in the calendar month in which the Activation Date shall occur. Unless otherwise hereafter directed in writing by MLBFS on or after the first to occur of the Maturity Date or the date of termination of the WCMA Line of Credit pursuant to the terms hereof, such interest will be automatically charged to the WCMA Account on the applicable Interest Due Date, and, to the extent not paid with free credit balances or the proceeds of sales of any Money Accounts then in the WCMA Account, as hereafter provided, paid by a WCMA Loan and added to the WCMA Loan Balance. All interest shall be computed for the actual number of days elapsed on the basis of a year consisting of 360 days.

(ii) Notwithstanding any provision to the contrary in this Agreement or any of the Additional Agreements, no provision of this Agreement or any of the Additional Agreements shall require the payment or permit the collection of any amount in excess of the maximum amount of interest permitted to be charged by law ("Excess Interest"). If any Excess Interest is provided for, or is adjudicated as being provided for, in this Agreement or any of the Additional Agreements, then: (A) Customer shall not be obligated to pay any Excess Interest; and (B) any Excess Interest that MLBFS may have received hereunder or under any of the Additional Agreements shall, at the option of MLBFS, be: (1) applied as a credit against the then unpaid WCMA Loan Balance, (2) refunded to the payer thereof, or (3) any combination of the foregoing.

**(f) Payments.** All payments required or permitted to be made pursuant to this Loan Agreement shall be made in lawful money of the United States. Unless otherwise directed by MLBFS, payments on account of the WCMA Loan Balance may be made by the delivery of checks (other than WCMA Checks), or by means of FTS or wire transfer of funds (other than funds from the WCMA Line of Credit) to MLPF&S for credit to Customer's WCMA Account. Notwithstanding anything in the WCMA Agreement to the contrary, Customer hereby irrevocably authorizes and directs MLPF&S to apply available free credit balances in the WCMA Account to the repayment of the WCMA Loan Balance prior to application for any other purpose. Payments to MLBFS from funds in the WCMA Account shall be deemed to be made by Customer upon the same basis and schedule as funds are made available for investment in the Money Accounts in accordance with the terms of the WCMA Agreement. All funds received by MLBFS from MLPF&S pursuant to the aforesaid authorization shall be applied by MLBFS to repayment of the WCMA Loan Balance. The acceptance by or on behalf of MLBFS of a check or other payment for a lesser amount than shall be due from Customer, regardless of any endorsement or statement thereon or transmitted therewith, shall not be deemed an accord and satisfaction or anything other than a payment on account, and MLBFS or anyone acting on behalf of MLBFS may accept such check or other payment without prejudice to the rights of MLBFS to recover the balance actually due or to pursue any other remedy under this Loan Agreement or applicable law



for such balance. All checks accepted by or on behalf of MLBFS in connection with the WCMA Line of Credit or Term Loan are subject to final collection.

(g) **Irrevocable Instructions to MLPF&S.** In order to minimize the WCMA Loan Balance, Customer hereby irrevocably authorizes and directs MLPF&S, effective on the Activation Date and continuing thereafter so long as this Agreement shall be in effect: (i) to immediately and prior to application for any other purpose pay to MLBFS to the extent of any WCMA Loan Balance or other amounts payable by Customer hereunder all available free credit balances from time to time in the WCMA Account; and (ii) if such available free credit balances are insufficient to pay the WCMA Loan Balance and such other amounts, and there are in the WCMA Account at any time any investments in Money Accounts (other than any investments constituting any Minimum Money Accounts Balance under the WCMA Directed Reserve Program), to immediately liquidate such investments and pay to MLBFS to the extent of any WCMA Loan Balance and such other amounts the available proceeds from the liquidation of any such Money Accounts.

(h) **Statements.** MLPF&S will include in each monthly statement it issues under the WCMA Program information with respect to WCMA Loans and the WCMA Loan Balance. Any questions that Customer may have with respect to such information should be directed to MLBFS; and any questions with respect to any other matter in such statements or about or affecting the WCMA Program should be directed to MLPF&S.

(i) **Use of Loan Proceeds; Securities Transactions.** On the Activation Date, a WCMA Loan will be made to pay any indebtedness of Customer to a third party secured by all or any part of the Collateral. The proceeds of each subsequent WCMA Loan shall be used by Customer solely for working capital in the ordinary course of its business, or, with the prior written consent of MLBFS, for other lawful business purposes of Customer not prohibited hereby. **Customer agrees that under no circumstances will funds borrowed from MLBFS through the WCMA Line of Credit be used: (i) for personal, family or household purposes of any person whatsoever, or (ii) to purchase, carry or trade in securities, or repay debt incurred to purchase, carry or trade in securities, whether in or in connection with the WCMA Account, another account of Customer with MLPF&S or an account of Customer at any other broker or dealer in securities.**

(j) **Renewal at Option of MLBFS; Right of Customer to Terminate.** MLBFS may at any time, in its sole discretion and at its sole option, renew the WCMA Line of Credit for one or more Renewal Years; it being understood, however, that no such renewal shall be effective unless set forth in a writing executed by a duly authorized representative of MLBFS and delivered to Customer. Unless any such renewal is accompanied by a proposed change in the terms of the WCMA Line of Credit (other than the extension of the Maturity Date), no such renewal shall require Customer's approval. Customer shall, however, have the right to terminate the WCMA Line of Credit at any time upon written notice to MLBFS.

(k) **Line Fees.** (i) In consideration of the extension of the WCMA Line of Credit by MLBFS to Customer during the period from the Activation Date to the Initial Maturity Date, Customer has paid or shall pay the Line Fee to MLBFS. If the Line Fee has not heretofore been paid by Customer, Customer hereby authorizes MLBFS, at its option, to either cause the Line Fee to be paid on the Activation Date with a WCMA Loan, or invoice Customer for such Line Fee (in which event Customer shall pay said fee within 5 Business Days after receipt of such invoice). No delay in the Activation Date, howsoever caused, shall entitle Customer to any rebate or reduction in the Line Fee or to any extension of the Initial Maturity Date.

(ii) Customer shall pay an additional Line Fee for each Renewal Year. In connection therewith, Customer hereby authorizes MLBFS, at its option, to either cause each such additional Line Fee to be paid with a WCMA Loan on or at any time after the first Business Day of such Renewal Year or invoiced to Customer at such time (in which event Customer shall pay such Line Fee within 5 Business Days after receipt of such invoice). Each Line Fee shall be deemed fully earned by MLBFS on the date payable by Customer, and no termination of the WCMA Line of Credit, howsoever caused, shall entitle Customer to any rebate or refund of any portion of such Line Fee.

 

## Article IV. GENERAL PROVISIONS

**4.1 Representations and Warranties.**

Customer represents and warrants to MLBFS that:

(a) **Organization and Existence.** Customer is a corporation, duly organized and validly existing in good standing under the laws of the District of Columbia and is qualified to do business and in good standing in each other state where the nature of its business or the property owned by it make such qualification necessary.

(b) **Execution, Delivery and Performance.** The execution, delivery and performance by Customer of this Loan Agreement and by Customer and each Guarantor of such of the Additional Agreements to which it is a party: (i) have been duly authorized by all requisite action, (ii) do not and will not violate or conflict with any law or other governmental requirement, or any of the agreements, instruments or documents which formed or govern Customer or any such Guarantor, and (iii) do not and will not breach or violate any of the provisions of, and will not result in a default by Customer or any such Guarantor under, any other agreement, instrument or document to which it is a party or by which it or its properties are bound.

(c) **Notices and Approvals.** Except as may have been given or obtained, no notice to or consent or approval of any governmental body or authority or other third party whatsoever (including, without limitation, any other creditor) is required in connection with the execution, delivery or performance by Customer or any Guarantor of such of this Loan Agreement, the Term Note and the other Additional Agreements to which it is a party.

(d) **Enforceability.** This Loan Agreement, the Term Note and such of the other Additional Agreements to which Customer or any Guarantor is a party are the respective legal, valid and binding obligations of Customer and such Guarantor, enforceable against it or them, as the case may be, in accordance with their respective terms, except as enforceability may be limited by bankruptcy and other similar laws affecting the rights of creditors generally or by general principles of equity.

(e) **Collateral.** Except for any Permitted Liens: (i) Customer has good and marketable title to the Collateral, (ii) none of the Collateral is subject to any lien, encumbrance or security interest, and (iii) upon the filing of all Uniform Commercial Code financing statements executed by Customer with respect to the Collateral in the appropriate jurisdiction(s) and/or the completion of any other action required by applicable law to perfect its liens and security interests, MLBFS will have valid and perfected first liens and security interests upon all of the Collateral.

(f) **Financial Statements** Except as expressly set forth in Customer's financial statements, all financial statements of Customer furnished to MLBFS have been prepared in conformity with generally accepted accounting principles, consistently applied, are true and correct in all material respects, and fairly present the financial condition of it as at such dates and the results of its operations for the periods then ended (subject, in the case of interim unaudited financial statements, to normal year-end adjustments); and since the most recent date covered by such financial statements, there has been no material adverse change in any such financial condition or operation. All financial statements furnished to MLBFS of any Guarantor are true and correct in all material respects and fairly represent such Guarantor's financial condition as of the date of such financial statements, and since the most recent date of such financial statements, there has been no material adverse change in such financial condition.

(g) **Litigation.** No litigation, arbitration, administrative or governmental proceedings are pending or, to the knowledge of Customer, threatened against Customer or any Guarantor, which would, if adversely determined, materially and adversely affect the liens and security interests of MLBFS hereunder or under any of the Additional Agreements, the financial condition of Customer or any such Guarantor or the continued operations of Customer.



(h) **Tax Returns.** All federal, state and local tax returns, reports and statements required to be filed by Customer and each Guarantor have been filed with the appropriate governmental agencies and all taxes due and payable by Customer and each Guarantor have been timely paid (except to the extent that any such failure to file or pay will not materially and adversely affect either the liens and security interests of MLBFS hereunder or under any of the Additional Agreements, the financial condition of Customer or any Guarantor, or the continued operations of Customer).

Each of the foregoing representations and warranties: (i) has been and will be relied upon as an inducement to MLBFS to provide the WCMA Line of Credit and make the Term Loan, and (ii) is continuing and shall be deemed remade by Customer on both the Closing Date and Activation Date, and thereafter concurrently with each request for a WCMA Loan.

**4.2 Financial and Other Information.**

Customer shall furnish or cause to be furnished to MLBFS during the term of this Loan Agreement all of the following:

(a) **Annual Financial Statements.** Within 120 days after the close of each fiscal year of Customer, Customer shall furnish or cause to be furnished to MLBFS a copy of the annual financial statements of Customer, consisting of at least a balance sheet as at the close of such fiscal year and related statements of income, retained earnings and cash flows, certified by its chief financial officer.

(b) **Interim Financial Statements.** Within 45 days after the close of each fiscal quarter of Customer, Customer shall furnish or cause to be furnished to MLBFS: (i) its statement of profit and loss for the fiscal quarter then ended, and (ii) a balance sheet as at the close of such fiscal quarter; all in reasonable detail and certified by its chief financial officer.

(c) **Agings of Accounts.** Within 45 days after the close of each fiscal quarter of Customer, Customer shall furnish or cause to be furnished to MLBFS an aging of Accounts and Chattel Paper for Customer as of the end of such fiscal quarter, in reasonable detail and certified by its chief financial officer.

(d) **Tax Returns.** Customer shall further furnish or cause to be furnished to MLBFS a copy of each Federal Income Tax Return of Customer filed during the term hereof, including all schedules thereto, not later than 15 days after the date filed with the Internal Revenue Service.

(e) **Other Information.** Customer shall furnish or cause to be furnished to MLBFS such other information as MLBFS may from time to time reasonably request relating to Customer, any Guarantor or the Collateral.

**4.3 Other Covenants.** Customer further covenants and agrees during the term of this Loan Agreement that:

(a) **Financial Records; Inspection.** Customer will: (i) maintain at its principal place of business complete and accurate books and records, and maintain all of its financial records in a manner consistent with the financial statements heretofore furnished to MLBFS, or prepared on such other basis as may be approved in writing by MLBFS; and (ii) permit MLBFS or its duly authorized representatives, upon reasonable notice and at reasonable times, to inspect its properties (both real and personal), operations, books and records.

(b) **Taxes.** Customer and each Guarantor will pay when due all taxes, assessments and other governmental charges, howsoever designated, and all other liabilities and obligations, except to the extent that any such failure to pay will not materially and adversely affect either the liens and security interests of MLBFS hereunder or under any of the Additional Agreements, the financial condition of Customer or any Guarantor or the continued operations of Customer.

(c) **Compliance With Laws and Agreements.** Neither Customer nor any Guarantor will violate any law, regulation or other governmental requirement, any judgment or order of any court or governmental agency or authority, or any agreement, instrument or document to which it is a party or by which it is bound, if any such violation will materially and adversely affect either the liens and security interests of MLBFS hereunder or



under any of the Additional Agreements, the financial condition of Customer or any Guarantor, or the continued operations of Customer.

(d) **Use of Loan Proceeds; Securities Transactions.** The proceeds of the Loan (including the initial WCMA Loan) shall be used by Customer solely for the Loan Purpose, or, with the prior written consent of MLBFS, for other lawful business purposes of Customer not prohibited hereby. The proceeds of each WCMA Loan other than the initial WCMA Loan shall be used by Customer solely for working capital in the ordinary course of Customer's business, or, with the prior written consent of MLBFS, for other lawful business purposes of Customer not prohibited hereby. **Customer agrees that under no circumstances will the Loan or funds borrowed from MLBFS through the Term WCMA Line of Credit be used: (i) for personal, family or household purposes of any person whatsoever, or (ii) to purchase, carry or trade in securities, or repay debt incurred to purchase, carry or trade in securities, whether in or in connection with the WCMA Account, another account of Customer with MLPF&S or an account of Customer at any other broker or dealer in securities.**

(e) **Notification By Customer.** Customer shall provide MLBFS with prompt written notification of: (i) any Default; (ii) any materially adverse change in the business, financial condition or operations of Customer; and (iii) any information which indicates that any financial statements of Customer or any Guarantor fail in any material respect to present fairly the financial condition and results of operations purported to be presented in such statements. Each notification by Customer pursuant hereto shall specify the event or information causing such notification, and, to the extent applicable, shall specify the steps being taken to rectify or remedy such event or information.

(f) **Notice of Change.** Customer shall give MLBFS not less than 30 days prior written notice of any change in the name (including any fictitious name) or principal place of business or residence of Customer or any Guarantor.

(g) **Continuity.** Except upon the prior written consent of MLBFS, which consent will not be unreasonably withheld: (i) Customer shall not be a party to any merger or consolidation with, or purchase or otherwise acquire all or substantially all of the assets of, or any material stock, partnership, joint venture or other equity interest in, any person or entity, or sell, transfer or lease all or any substantial part of its assets, if any such action would result in either: (A) a material change in the principal business, ownership or control of Customer, or (B) a material adverse change in the financial condition or operations of Customer; (ii) Customer shall preserve its existence and good standing in the jurisdiction(s) of establishment and operation; (iii) Customer shall not engage in any material business substantially different from its business in effect as of the date of application by Customer for credit from MLBFS, or cease operating any such material business; (iv) Customer shall not cause or permit any other person or entity to assume or succeed to any material business or operations of Customer; and (v) Customer shall not cause or permit any material change in its controlling ownership.

**4.4 Collateral.**

(a) **Pledge of Collateral.** To secure payment and performance of the Obligations, Customer hereby pledges, assigns, transfers and sets over to MLBFS, and grants to MLBFS first liens and security interests in and upon all of the Collateral, subject only to Permitted Liens.

(b) **Liens.** Except upon the prior written consent of MLBFS, Customer shall not create or permit to exist any lien, encumbrance or security interest upon or with respect to any Collateral now owned or hereafter acquired other than Permitted Liens.

(c) **Performance of Obligations.** Customer shall perform all of its obligations owing on account of or with respect to the Collateral; it being understood that nothing herein, and no action or inaction by MLBFS, under this Loan Agreement or otherwise, shall be deemed an assumption by MLBFS of any of Customer's said obligations.

(d) **Collections.** So long as no Event of Default shall have occurred and be continuing, Customer may in the ordinary course of its business collect all of its Accounts. Customer shall take such action with respect to



collection of its Accounts and protection of the other Collateral as MLBFS may from time to time reasonably request.

(e) **Account Schedules.** Upon the request of MLBFS, made now or at any reasonable time or times hereafter, Customer shall deliver to MLBFS, in addition to the other information required hereunder, a schedule identifying, for each Account and all Chattel Paper subject to MLBFS' security interests hereunder, each Account Debtor by name and address and amount, invoice or contract number and date of each invoice or contract. Customer shall furnish to MLBFS such additional information with respect to the Collateral, and amounts received by Customer as proceeds of any of the Collateral, as MLBFS may from time to time reasonably request.

(f) **Notice of Certain Events.** Customer shall give MLBFS immediate notice of any attachment, lien, judicial process, encumbrance or claim affecting or involving $25,000.00 or more of the Collateral.

(g) **Indemnification.** Customer shall indemnify, defend and save MLBFS harmless from and against any and all claims, liabilities, losses, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) of any nature whatsoever which may be asserted against or incurred by MLBFS arising out of or in any manner occasioned by (i) the ownership or collection of any Collateral, or (ii) any failure by Customer to perform any of its obligations hereunder; excluding, however, from said indemnity any such claims, liabilities, etc. arising directly out of the willful wrongful act or active gross negligence of MLBFS. This indemnity shall survive the expiration or termination of this Loan Agreement as to all matters arising or accruing prior to such expiration or termination.

**4.5 Events of Default.**

The occurrence of any of the following events shall constitute an "Event of Default" under this Loan Agreement:

(a) **Exceeding the Maximum WCMA Line of Credit.** If the WCMA Loan Balance shall at any time exceed the Maximum WCMA Line of Credit and Customer shall fail to deposit sufficient funds into the WCMA Account to reduce the WCMA Loan Balance below the Maximum WCMA Line of Credit within five (5) Business Days after written notice thereof shall have been given by MLBFS to Customer.

(b) **Other Failure to Pay.** Customer shall fail to pay to MLBFS or deposit into the WCMA Account when due any other amount owing or required to be paid or deposited by Customer under this Loan Agreement or the Term Note, or shall fail to pay when due any other Obligations, and any such failure shall continue for more than five (5) Business Days after written notice thereof shall have been given by MLBFS to Customer.

(c) **Failure to Perform.** Customer or any Guarantor shall default in the performance or observance of any covenant or agreement on its part to be performed or observed under this Loan Agreement, the Term Note or any of the other Additional Agreements (not constituting an Event of Default under any other clause of this Section), and such default shall continue unremedied for ten (10) Business Days after written notice thereof shall have been given by MLBFS to Customer.

(d) **Breach of Warranty.** Any representation or warranty made by Customer or any Guarantor contained in this Loan Agreement, the Term Note or any of the other Additional Agreements shall at any time prove to have been incorrect in any material respect when made.

(e) **Default Under Other Agreement.** A default or Event of Default by Customer or any Guarantor shall occur under the terms of any other agreement, instrument or document with or intended for the benefit of MLBFS, MLPF&S or any of their affiliates, and any required notice shall have been given and required passage of time shall have elapsed.

(f) **Bankruptcy Event.** Any Bankruptcy Event shall occur.

(g) **Material Impairment.** Any event shall occur which shall reasonably cause MLBFS to in good faith believe that the prospect of payment or performance by Customer or any Guarantor has been materially impaired.




**(h) Acceleration of Debt to Other Creditors.** Any event shall occur which results in the acceleration of the maturity of any indebtedness of $100,000.00 or more of Customer or any Guarantor to another creditor under any indenture, agreement, undertaking, or otherwise.

**4.6 Remedies.**

**(a) Remedies Upon Default.** Upon the occurrence and during the continuance of any Event of Default, MLBFS may at its sole option do any one or more or all of the following, at such time and in such order as MLBFS may in its sole discretion choose:

**(i) Termination.** MLBFS may without notice terminate its obligation to make the Term Loan (if the Term Loan has not then been funded) and terminate the WCMA Line of Credit and all obligations to provide the WCMA Line of Credit or otherwise extend any credit to or for the benefit of Customer (it being understood, however, that upon the occurrence of any Bankruptcy Event the WCMA Line of Credit and all such obligations shall automatically terminate without any action on the part of MLBFS); and upon any such termination MLBFS shall be relieved of all such obligations.

**(ii) Acceleration.** MLBFS may declare the principal of and interest on the Term Note and WCMA Note, and all other Obligations to be forthwith due and payable, whereupon all such amounts shall be immediately due and payable, without presentment, demand for payment, protest and notice of protest, notice of dishonor, notice of acceleration, notice of intent to accelerate or other notice or formality of any kind, all of which are hereby expressly waived; provided, however, that upon the occurrence of any Bankruptcy Event all such principal, interest and other Obligations shall automatically become due and payable without any action on the part of MLBFS.

**(iii) Exercise Rights of Secured Party.** MLBFS may exercise any or all of the remedies of a secured party under applicable law, including, but not limited to, the UCC, and any or all of its other rights and remedies under this Loan Agreement and the Additional Agreements.

**(iv) Possession.** MLBFS may require Customer to make the Collateral and the records pertaining to the Collateral available to MLBFS at a place designated by MLBFS which is reasonably convenient to Customer, or may take possession of the Collateral and the records pertaining to the Collateral without the use of any judicial process and without any prior notice to Customer.

**(v) Sale.** MLBFS may sell any or all of the Collateral at public or private sale upon such terms and conditions as MLBFS may reasonably deem proper. MLBFS may purchase any Collateral at any such public sale. The net proceeds of any such public or private sale and all other amounts actually collected or received by MLBFS pursuant hereto, after deducting all costs and expenses incurred at any time in the collection of the Obligations and in the protection, collection and sale of the Collateral, will be applied to the payment of the Obligations, with any remaining proceeds paid to Customer or whoever else may be entitled thereto, and with Customer and each Guarantor remaining jointly and severally liable for any amount remaining unpaid after such application.

**(vi) Delivery of Cash, Checks, Etc.** MLBFS may require Customer to forthwith upon receipt, transmit and deliver to MLBFS in the form received, all cash, checks, drafts and other instruments for the payment of money (properly endorsed, where required, so that such items may be collected by MLBFS) which may be received by Customer at any time in full or partial payment of any Collateral, and require that Customer not commingle any such items which may be so received by Customer with any other of its funds or property but instead hold them separate and apart and in trust for MLBFS until delivery is made to MLBFS.

**(vii) Notification of Account Debtors.** MLBFS may notify any Account Debtor that its Account or Chattel Paper has been assigned to MLBFS and direct such Account Debtor to make payment directly to MLBFS of all amounts due or becoming due with respect to such Account or Chattel Paper; and MLBFS may enforce payment and collect, by legal proceedings or otherwise, such Account or Chattel Paper.



(viii) **Control of Collateral.** MLBFS may otherwise take control in any lawful manner of any cash or non-cash items of payment or proceeds of Collateral and of any rejected, returned, stopped in transit or repossessed goods included in the Collateral and endorse Customer's name on any item of payment on or proceeds of the Collateral.

(b) **Set-Off.** MLBFS shall have the further right upon the occurrence and during the continuance of an Event of Default to set-off, appropriate and apply toward payment of any of the Obligations, in such order of application as MLBFS may from time to time and at any time elect, any cash, credit, deposits, accounts, securities and any other property of Customer which is in transit to or in the possession, custody or control of MLBFS, MLPF&S or any agent, bailee, or affiliate of MLBFS or MLPF&S, including, without limitation, the WCMA Account and any Money Accounts, and all cash, securities and other financial assets therein or controlled thereby, and all proceeds thereof. Customer hereby collaterally assigns and grants to MLBFS a continuing security interest in all such property as additional Collateral.

(c) **Power of Attorney.** Effective upon the occurrence and during the continuance of an Event of Default, Customer hereby irrevocably appoints MLBFS as its attorney-in-fact, with full power of substitution, in its place and stead and in its name or in the name of MLBFS, to from time to time in MLBFS' sole discretion take any action and to execute any instrument which MLBFS may deem necessary or advisable to accomplish the purposes of this Loan Agreement, including, but not limited to, to receive, endorse and collect all checks, drafts and other instruments for the payment of money made payable to Customer included in the Collateral.

(d) **Remedies are Severable and Cumulative.** All rights and remedies of MLBFS herein are severable and cumulative and in addition to all other rights and remedies available in the Additional Agreements, at law or in equity, and any one or more of such rights and remedies may be exercised simultaneously or successively.

(e) **Notices.** To the fullest extent permitted by applicable law, Customer hereby irrevocably waives and releases MLBFS of and from any and all liabilities and penalties for failure of MLBFS to comply with any statutory or other requirement imposed upon MLBFS relating to notices of sale, holding of sale or reporting of any sale, and Customer waives all rights of redemption or reinstatement from any such sale. Any notices required under applicable law shall be reasonably and properly given to Customer if given by any of the methods provided herein at least 5 Business Days prior to taking action. MLBFS shall have the right to postpone or adjourn any sale or other disposition of Collateral at any time without giving notice of any such postponed or adjourned date. In the event MLBFS seeks to take possession of any or all of the Collateral by court process, Customer further irrevocably waives to the fullest extent permitted by law any bonds and any surety or security relating thereto required by any statute, court rule or otherwise as an incident to such possession, and any demand for possession prior to the commencement of any suit or action.

**4.7 Miscellaneous.**

(a) **Non-Waiver.** No failure or delay on the part of MLBFS in exercising any right, power or remedy pursuant to this Loan Agreement, the Term Note or any of the other Additional Agreements shall operate as a waiver thereof, and no single or partial exercise of any such right, power or remedy shall preclude any other or further exercise thereof, or the exercise of any other right, power or remedy. Neither any waiver of any provision of this Loan Agreement, the Term Note or any of the other Additional Agreements, nor any consent to any departure by Customer therefrom, shall be effective unless the same shall be in writing and signed by MLBFS. Any waiver of any provision of this Loan Agreement or any of the Additional Agreements and any consent to any departure by Customer from the terms of this Loan Agreement, the Term Note or any of the other Additional Agreements shall be effective only in the specific instance and for the specific purpose for which given. Except as otherwise expressly provided herein, no notice to or demand on Customer shall in any case entitle Customer to any other or further notice or demand in similar or other circumstances.

(b) **Disclosure.** Customer hereby irrevocably authorizes MLBFS and each of its affiliates, including without limitation MLPF&S, to at any time (whether or not an Event of Default shall have occurred) obtain from and disclose to each other any and all financial and other information about Customer. In connection with said authorization, the parties recognize that in order to provide a WCMA Line of Credit certain information about




Customer is required to be made available on a computer network accessible by certain affiliates of MLBFS, including MLPF&S.

(c) **Communications.** All notices and other communications required or permitted hereunder or in connection with any of the Additional Agreements shall be in writing, and shall be either delivered personally, mailed by postage prepaid certified mail or sent by express overnight courier or by facsimile. Such notices and communications shall be deemed to be given on the date of personal delivery, facsimile transmission or actual delivery of certified mail, or one Business Day after delivery to an express overnight courier. Unless otherwise specified in a notice sent or delivered in accordance with the terms hereof, notices and other communications in writing shall be given to the parties hereto at their respective addresses set forth at the beginning of this Loan Agreement, or, in the case of facsimile transmission, to the parties at their respective regular facsimile telephone number.

(d) **Costs, Expenses and Taxes.** Customer shall upon demand pay or reimburse MLBFS for: (i) all Uniform Commercial Code and other filing and search fees and expenses incurred by MLBFS in connection with the verification, perfection or preservation of MLBFS' rights hereunder or in the Collateral or any other collateral for the Obligations; (ii) any and all stamp, transfer and other taxes and fees payable or determined to be payable in connection with the execution, delivery and/or recording of this Loan Agreement or any of the Additional Agreements; and (iii) all reasonable fees and out-of-pocket expenses (including, but not limited to, reasonable fees and expenses of outside counsel) incurred by MLBFS in connection with the collection of any sum payable hereunder or under any of the Additional Agreements not paid when due, the enforcement of this Loan Agreement or any of the Additional Agreements and the protection of MLBFS' rights hereunder or thereunder, excluding, however, salaries and normal overhead attributable to MLBFS' employees. The obligations of Customer under this paragraph shall survive the expiration or termination of this Loan Agreement and the discharge of the other Obligations.

(e) **Right to Perform Obligations.** If Customer shall fail to do any act or thing which it has covenanted to do under this Loan Agreement or any representation or warranty on the part of Customer contained in this Loan Agreement shall be breached, MLBFS may, in its sole discretion, after 5 Business Days written notice is sent to Customer (or such lesser notice, including no notice, as is reasonable under the circumstances), do the same or cause it to be done or remedy any such breach, and may expend its funds for such purpose. Any and all reasonable amounts so expended by MLBFS shall be repayable to MLBFS by Customer upon demand, with interest at the Interest Rate during the period from and including the date funds are so expended by MLBFS to the date of repayment, and all such amounts shall be additional Obligations. The payment or performance by MLBFS of any of Customer's obligations hereunder shall not relieve Customer of said obligations or of the consequences of having failed to pay or perform the same, and shall not waive or be deemed a cure of any Default.

(f) **Late Charge.** Any payment required to be made by Customer pursuant to this Loan Agreement or any of the Additional Agreements not paid within ten (10) days of the applicable due date shall be subject to a late charge in an amount equal to the lesser of: (i) 5% of the overdue amount, or (ii) the maximum amount permitted by applicable law. Such late charge shall be payable on demand, or, without demand, may in the sole discretion of MLBFS be paid by a WCMA Loan and added to the WCMA Loan Balance in the same manner as provided herein for accrued interest with respect to the WCMA Line of Credit.

(g) **Further Assurances.** Customer agrees to do such further acts and things and to execute and deliver to MLBFS such additional agreements, instruments and documents as MLBFS may reasonably require or deem advisable to effectuate the purposes of this Loan Agreement, the Term Note or any of the other Additional Agreements, or to establish, perfect and maintain MLBFS' security interests and liens upon the Collateral, including, but not limited to: (i) executing financing statements or amendments thereto when and as reasonably requested by MLBFS; and (ii) if in the reasonable judgment of MLBFS it is required by local law, causing the owners and/or mortgagees of the real property on which any Collateral may be located to execute and deliver to MLBFS waivers or subordinations reasonably satisfactory to MLBFS with respect to any rights in such Collateral.

(h) **Binding Effect; Assignment.** This Loan Agreement, the Term Note and the other Additional Agreements shall be binding upon, and shall inure to the benefit of MLBFS, Customer and their respective successors



and assigns. Customer shall not assign any of its rights or delegate any of its obligations under this Loan Agreement, the Term Note or any of the other Additional Agreements without the prior written consent of MLBFS. Unless otherwise expressly agreed to in a writing signed by MLBFS, no such consent shall in any event relieve Customer of any of its obligations under this Loan Agreement, the Term Note or the other Additional Agreements.

(i) **Headings.** Captions and section and paragraph headings in this Loan Agreement are inserted only as a matter of convenience, and shall not affect the interpretation hereof.

(j) **Governing Law.** This Loan Agreement, the Term Note and, unless otherwise expressly provided therein, each of the other Additional Agreements, shall be governed in all respects by the laws of the State of Illinois.

(k) **Severability of Provisions.** Whenever possible, each provision of this Loan Agreement, the Term Note and the other Additional Agreements shall be interpreted in such manner as to be effective and valid under applicable law. Any provision of this Loan Agreement, the Term Note or any of the other Additional Agreements which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Loan Agreement, the Term Note and the other Additional Agreements or affecting the validity or enforceability of such provision in any other jurisdiction.

(l) **Term.** This Loan Agreement shall become effective on the date accepted by MLBFS at its office in Chicago, Illinois, and, subject to the terms hereof, shall continue in effect so long thereafter as either MLBFS shall be obligated to make the Term Loan or extend the WCMA Line of Credit, or, after the Activation Date and/or the Closing Date, there shall be any moneys outstanding under the Term Note, WCMA Note or this Loan Agreement, or there shall be any other Obligations outstanding.

(m) **Counterparts.** This Loan Agreement may be executed in one or more counterparts which, when taken together, constitute one and the same agreement.

(n) **Jurisdiction; Waiver.** CUSTOMER ACKNOWLEDGES THAT THIS LOAN AGREEMENT IS BEING ACCEPTED BY MLBFS IN PARTIAL CONSIDERATION OF MLBFS' RIGHT AND OPTION, IN ITS SOLE DISCRETION, TO ENFORCE THIS LOAN AGREEMENT (INCLUDING THE WCMA NOTE SET FORTH HEREIN), THE TERM NOTE AND THE OTHER ADDITIONAL AGREEMENTS IN EITHER THE STATE OF ILLINOIS OR IN ANY OTHER JURISDICTION WHERE CUSTOMER OR ANY COLLATERAL FOR THE OBLIGATIONS MAY BE LOCATED. CUSTOMER CONSENTS TO JURISDICTION IN THE STATE OF ILLINOIS AND VENUE IN ANY STATE OR FEDERAL COURT IN THE COUNTY OF COOK FOR SUCH PURPOSES, AND CUSTOMER WAIVES ANY AND ALL RIGHTS TO CONTEST SAID JURISDICTION AND VENUE. CUSTOMER FURTHER WAIVES ANY RIGHTS TO COMMENCE ANY ACTION AGAINST MLBFS IN ANY JURISDICTION EXCEPT IN THE COUNTY OF COOK AND STATE OF ILLINOIS. MLBFS AND CUSTOMER HEREBY EACH EXPRESSLY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES AGAINST THE OTHER PARTY WITH RESPECT TO ANY MATTER RELATING TO, ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE WCMA LINE OF CREDIT, THE TERM LOAN, THIS LOAN AGREEMENT, ANY ADDITIONAL AGREEMENTS AND/OR ANY OF THE TRANSACTIONS WHICH ARE THE SUBJECT MATTER OF THIS LOAN AGREEMENT.

(o) **Integration.** THIS LOAN AGREEMENT, TOGETHER WITH THE TERM NOTE AND THE OTHER ADDITIONAL AGREEMENTS, CONSTITUTES THE ENTIRE UNDERSTANDING AND REPRESENTS THE FULL AND FINAL AGREEMENT BETWEEN THE PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF, AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR WRITTEN AGREEMENTS OR PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS OF THE PARTIES. WITHOUT LIMITING THE FOREGOING, CUSTOMER ACKNOWLEDGES THAT EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN: (i) NO PROMISE OR COMMITMENT HAS BEEN MADE TO IT BY MLBFS, MLPF&S OR ANY OF THEIR RESPECTIVE EMPLOYEES, AGENTS OR REPRESENTATIVES TO: (X) LEND ANY ADDITIONAL MONEYS, UNDER THE TERM LOAN, OR OTHERWISE, OR OTHERWISE EXTEND ANY OTHER CREDIT TO CUSTOMER OR ANY OTHER PARTY, OR (Y) EXTEND THE AVAILABILITY OF THE WCMA LINE OF

CREDIT OR THE DUE DATE OF THE WCMA LOAN BALANCE, OR (Z) INCREASE THE MAXIMUM WCMA LINE OF CREDIT; (II) NO PURPORTED AGREEMENT TO LEND ADDITIONAL MONEYS OR OTHERWISE MODIFY THE TERMS OF THE TERM LOAN, OR TO EXTEND THE MATURITY DATE OR INCREASE THE MAXIMUM WCMA LINE OF CREDIT, SHALL BE VALID OR BINDING UNLESS EXPRESSLY SET FORTH IN A WRITTEN INSTRUMENT SIGNED BY MLBFS; AND (III) THIS LOAN AGREEMENT SUPERSEDES AND REPLACES ANY AND ALL PROPOSALS, LETTERS OF INTENT AND APPROVAL AND COMMITMENT LETTERS FROM MLBFS TO CUSTOMER, NONE OF WHICH SHALL BE CONSIDERED AN ADDITIONAL AGREEMENT. NO AMENDMENT OR MODIFICATION OF THIS AGREEMENT OR ANY OF THE ADDITIONAL AGREEMENTS TO WHICH CUSTOMER IS A PARTY SHALL BE EFFECTIVE UNLESS IN A WRITING SIGNED BY BOTH MLBFS AND CUSTOMER.

IN WITNESS WHEREOF, this Loan Agreement has been executed as of the day and year first above written.

EXECUTIVE PERSONNEL SERVICES, INC.

By: _____    x _____
Signature (1)                          Signature (2)

x GERALD M. SHEALEY          x RODNEY SHEALEY
Printed Name                           Printed Name

x PRESIDENT & CEO            x VICE-PRESIDENT
Title                                  Title


Accepted at Chicago, Illinois:
MERRILL LYNCH BUSINESS FINANCIAL
SERVICES INC.


By: _Jennifer Corkin_____

g:\word\admin\jlc\new loans\executive personnel services (wcma & term).doc



Private Client Group

**Merrill Lynch Business
Financial Services Inc.**
222 North LaSalle Street
17th Floor
Chicago, Illinois 60601
312/269-4496
FAX 312/499-3256



July 7, 1999

Mr. Gerald Shealey
Executive Personnel Services Inc.
1990 M St. N.W. Suite 480
Washington DC 20036

Re: Extension of WCMA Line of Credit No. 749-07U96

Dear Mr. Shealey,

It is a pleasure to inform you that we have approved an extension of the above-numbered WCMA Line of Credit for Executive Personnel Services Inc.

As extended, the new Maturity Date will be June 30, 2000, with all other terms and conditions remaining unchanged. In connection with this extension, a $1,500.00 fee will be charged to the WCMA Account.

With so many institutions offering financial services today, we realize that you have a choice, and therefore we want to thank you for choosing Merrill Lynch. We hope that the WCMA Line of Credit has provided better control of your working capital and has helped enhance your company's bottom line. In addition to the WCMA Line of Credit, Merrill Lynch offers a broad range or products and services to our business clients including:

Term financing and leasing for equipment, and financing for owner-occupied real estate and ESOP's.

Business Advisory Services, including business valuations, and advisory services in connection with ESOP's and the acquisition or sale of a business.

Retirement plans, including 401(k), Defined Benefit, SEP and Profit Sharing plans.

Business investment services, including strategies for short-term and intermediate term investments.

Once again, we are pleased to provide you with this extension of your WCMA Line of Credit. Should you have any questions, please contact John Von Thaden at 609-596-4678.

Very truly yours,

Merrill Lynch Business Financial Services Inc.

By: _____
Christopher J. Olney
Portfolio Manager

cc: John Von Thaden
    Kathryn Badger



Private Client Group

**Merrill Lynch Business
Financial Services Inc.**
222 North LaSalle Street
17th Floor
Chicago, Illinois 60601
(312) 269-4496
FAX: (312) 201-0210

October 15, 1999

Mr. Gerald Shealey
Executive Personnel Services, Inc.
1990 M St., N.W., Suite 480
Washington, DC 20036

                    Re: WCMA Line of Credit Increase

Dear Mr. Shealey:

This Letter Agreement will serve to confirm certain agreements of Merrill Lynch Business Financial Services Inc. ("MLBFS") and Executive Personnel Services, Inc. ("Customer") with respect to: (i) that certain **WCMA AND TERM LOAN AND SECURITY AGREEMENT NO. 9806660201** between MLBFS and Customer (including any previous amendments and extensions thereof), and (ii) all other agreements between MLBFS and Customer or any party who has guaranteed or provided collateral for Customer's obligations to MLBFS (a "Guarantor") in connection therewith (collectively, the "Loan Documents"). Capitalized terms used herein and not defined herein shall have the meaning set forth in the Loan Documents.

Subject to the terms hereof, effective as of the "Effective Date" (as defined below), the Loan Documents are hereby amended as follows:

(a) The term "Maximum WCMA Line of Credit" shall mean $500,000.00.

(b) The annual "Line Fee" is hereby increased to $2,500.00. In connection with the increase in the Maximum WCMA Line of Credit pursuant hereto, a portion of such new Line Fee in the amount of $666.00 (the "Increase Fee") is now due and owing. Customer hereby authorizes and directs MLBFS to charge the Increase Fee to WCMA Account No. 749-07U96 on or at any time after the Effective Date. Once charged, the Increase Fee is non-refundable.

Except as expressly amended hereby, the Loan Documents shall continue in full force and effect upon all of their terms and conditions.

By his execution of this Letter Agreement, the below-named Guarantor hereby consents to the foregoing modifications to the Loan Documents, and hereby agrees that the "Obligations" under his Unconditional Guaranty shall extend to and include the Obligations of Customer under the Loan Documents, as amended hereby.

Customer and said Guarantor acknowledge, warrant and agree, as a primary inducement to MLBFS to enter into this Agreement, that: (a) no Default or Event of Default has occurred and is continuing under the Loan Documents; (b) each of the warranties of Customer in the Loan Documents are true and correct as of the date hereof and shall be deemed remade as of the date hereof; (c) neither Customer nor said Guarantor have any claim against MLBFS or any of its

Executive Personnel Services, Inc.
October 15, 1999
Page No. 2

affiliates arising out of or in connection with the Loan Documents or any other matter whatsoever;
and (d) neither Customer nor said Guarantor have any defense to payment of any amounts owing,
or any right of counterclaim for any reason under, the Loan Documents.

**The obligations of MLBFS under this Letter Agreement are subject to its receipt (where
applicable) and satisfaction with the following:**

**Evidence from the Secretary of State of Virginia and also from the District of Columbia (its
place of incorporation) that Customer is an active corporation and in good standing (i.e.
current Certificates of Good Standing from each).**

Provided that no Event of Default, or event which with the giving of notice, passage of time, or
both, would constitute an Event of Default, shall then have occurred and be continuing under the
terms of the Loan Documents, the amendments and agreements in this Letter Agreement will
become effective on the date (the "Effective Date") upon which: (a) Customer and the Guarantor
shall have executed and returned the duplicate copy of this Letter Agreement enclosed herewith;
and (b) an officer of MLBFS shall have reviewed and approved this Letter Agreement as being
consistent in all respects with the original internal authorization hereof.

Notwithstanding the foregoing, if Customer and the Guarantor do not execute and return the
duplicate copy of this Letter Agreement within 14 days from the date hereof, or if for any other
reason (other than the sole fault of MLBFS) the Effective Date shall not occur within said 14-day
period, then all of said amendments and agreements will, at the sole option of MLBFS, be void.

Very truly yours,

Merrill Lynch Business Financial Services Inc.

By: _____
        Christopher J. Olney
        Portfolio Manager

OCT-26-1999  15:11        MERRILL LYNCH                    312 368 1387   P.03/04

MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.

Executive Personnel Services, Inc.
October 15, 1999
Page No. 3

Accepted:

Executive Personnel Services, Inc.

By: _____

Printed Name: __GERALD M. SHEALEY___

Title: __PRESIDENT & CEO___

Approved:

_____
Gerald M. Shealey

g:\word\admin\bin\executive personnel services increase.doc



**Private Client Group**

**Merrill Lynch Business
Financial Services Inc.**
222 North LaSalle Street
17th Floor
Chicago, Illinois 60601
(312) 499-3097
FAX 312 499-3253

**Kyle A. Smoley**

July 26, 2000

**Merrill Lynch**

Mr. Gerald Shealey
Executive Personnel Services Inc.
1990 M St., N.W., Suite 480
Washington, DC 20036

RE:  Working Capital Management Account No. 749-07U96 (the "WCMA")

Dear Mr. Shealey:

As you are aware, your WCMA Line of Credit expired on July 31, 2000.  Certain information, which must be reviewed by us prior to renewal of the credit facility, is not yet available.  Consequently, as an accommodation to you, your WCMA will be extended through and including August 31, 2000.

While we are pleased to continue offering credit services to you on this extended basis, it is important you have the following information prepared and forwarded to us immediately:

1) 12/31/99 Corporate Tax Return
2) 6/30/99 quarterly financial statement
3) 6/30/99 accounts receivable aging

Should you have any questions in this matter, please contact me at 312-499-3097.

Sincerely,

Kyle A. Smoley
Relationship Manager

cc: MLBFS Accounting - Chicago, IL
    Chris Morse – MLBFS ~ Washington, DC
    Kathryn Badger – MLPF&S ~ Washington, DC



Private Client Group

**Merrill Lynch Business
Financial Services Inc.**
222 North LaSalle Street
17th Floor
Chicago, Illinois 60601
(312) 499-3097
FAX: (312) 499-3253

August 25, 2000

Mr. Gerald Shealey
Executive Personnel Services, Inc.
1990 M Street NW, Suite 480
Washington, D.C. 20036

Re: **WCMA Line of Credit Increase and Extension**

Dear Mr. Shealey,

I am pleased to advise you that the request of Executive Personnel Services, Inc. for an increase and extension of its WCMA Line of Credit has been approved upon the terms set forth in the enclosed Letter Agreement.

Note that, among other conditions in said Letter Agreement, in order for this increase and extension to become effective, one copy of the enclosed Letter Agreement must be fully executed and returned to me within 14 days from the date hereof.

If you have any questions, please call me at (312) 499-3097.

Very truly yours,

MERRILL LYNCH BUSINESS
FINANCIAL SERVICES INC.

By: _____
Kyle A. Smoley
Relationship Manager

cc: Chris Morse



Private Client Group

**Merrill Lynch Business
Financial Services Inc.**
222 North LaSalle Street
17th Floor
Chicago, Illinois 60601
(312) 499-3097
FAX: (312) 499-3253

August 25, 2000

Executive Personnel Services, Inc.
1990 M Street NW, Suite 480
Washington, D.C. 20036

**Re: WCMA Line of Credit Increase and Extension**

Ladies & Gentlemen:

This Letter Agreement will serve to confirm certain agreements of Merrill Lynch Business Financial Services Inc. ("MLBFS") and Executive Personnel Services, Inc. ("Customer") with respect to: (i) that certain **WCMA AND TERM LOAN AND SECURITY AGREEMENT NO. 9806660201** between MLBFS and Customer (including any previous amendments and extensions thereof), and (ii) all other agreements between MLBFS and Customer or any party who has guaranteed or provided collateral for Customer's obligations to MLBFS (a "Guarantor") in connection therewith (collectively, the "Loan Documents"). Capitalized terms used herein and not defined herein shall have the meaning set forth in the Loan Documents.

Subject to the terms hereof, effective as of the "Effective Date" (as defined below) the Loan Documents are hereby amended as follows:

(a) The "Maturity Date" of the WCMA Line of Credit is hereby extended to June 30, 2001.

(b) The "Maximum WCMA Line of Credit" is hereby increased to $700,000.00.

(c) The "Line Fee" for the period ending June 30, 2001, shall be $3,500.00. Customer hereby authorizes and directs MLBFS to charge said amount to WCMA Account No. 749-07U96 on or at any time after the Effective Date.

Except as expressly amended hereby, the Loan Documents shall continue in full force and effect upon all of their terms and conditions.

By his execution of this Letter Agreement, the below-named Guarantor hereby consents to the foregoing modifications to the Loan Documents, and hereby agrees that the "Obligations" under his Unconditional Guaranty and/or agreements providing collateral shall extend to and include the Obligations of Customer under the Loan Documents, as amended hereby.

Customer and said Guarantor acknowledge, warrant and agree, as a primary inducement to MLBFS to enter into this Agreement, that: (a) no Default or Event of Default has occurred and is continuing under the Loan Documents; (b) each of the warranties of Customer in the Loan Documents are true and correct as of the date hereof and shall be deemed remade as of the date hereof; (c) neither Customer nor said Guarantor have any claim against MLBFS or any of its affiliates arising out of or in connection with the Loan Documents or any other matter whatsoever;

Executive Personnel Services, Inc.
August 25, 2000
Page No. 2

and (d) neither Customer nor said Guarantor have any defense to payment of any amounts owing, or any right of counterclaim for any reason under, the Loan Documents.

**The obligations of MLBFS under this Letter Agreement are subject to its receipt (where applicable) and satisfaction with the following:**

> **A copy of Customer's federal income tax return for fiscal year end December 31, 1999.**

Provided that no Event of Default, or event which with the giving of notice, passage of time, or both, would constitute an Event of Default, shall then have occurred and be continuing under the terms of the Loan Documents, and the condition specified above shall have been met to our satisfaction, the amendments and agreements in this Letter Agreement will become effective on the date (the "Effective Date") upon which: (a) Customer and the Guarantor shall have executed and returned the duplicate copy of this Letter Agreement enclosed herewith; and (b) an officer of MLBFS shall have reviewed and approved this Letter Agreement as being consistent in all respects with the original internal authorization hereof.

Notwithstanding the foregoing, if Customer and the Guarantor do not execute and return the duplicate copy of this Letter Agreement within 14 days from the date hereof, or if for any other reason (other than the sole fault of MLBFS) the Effective Date shall not occur within said 14-day period, then all of said amendments and agreements will, at the sole option of MLBFS, be void.

Very truly yours,

**Merrill Lynch Business Financial Services Inc.**

By: _____
    Kyle A. Smoley
    Relationship Manager

*Accepted:*

**Executive Personnel Services, Inc.**

By: _____

Printed Name: GERALD M SHEALEY

Title: President & CEO

*Approved:*

_____
Gerald M. Shealey



Private Client Group

**Merrill Lynch Business Financial Services Inc.**
222 North LaSalle Street
17th Floor
Chicago, Illinois 60601
312/499-3305
FAX 312/499-3256

June 27, 2001

Mr. Gerald Shealey
Executive Personnel Services Inc.
1990 M St., N.W., Suite 480
Washington, DC 20036

Re: WCMA Line of Credit No. 749-07U96

Dear Mr. Shealey,

As you are aware, the above-numbered WCMA Line of Credit will expire on June 30, 2001. Certain information which must be reviewed by us prior to renewal of the credit facility is not currently available. Consequently, as an accommodation to you, the WCMA Line of Credit has been temporarily extended to July 31, 2001.

While we are pleased to continue offering credit services to you on this extended basis, it is important that you obtain or prepare the following information for us as soon as possible:

(1) 5/1/01 Corporate Tax Returns
(2) 5/1/01 Corporate Financial Statements
(3) 11/15/00 Corporate Financial Statements

Should you have any questions, please contact me at (312) 499-3305.

Very truly yours,

Merrill Lynch Business Financial Services Inc.

By: _____
Michael Curtis
Relationship Analyst

cc: Chris Morse
Kathryn Badger

Private Client Group

Merrill Lynch Business
Financial Services Inc.
222 North LaSalle Street
17th Floor
Chicago, Illinois 60601
312/499-3305
FAX 312/499-3256

 **Merrill Lynch**

July 31, 2001

Mr. Gerald Shealey
Executive Personnel Services Inc.
1990 M St., N.W., Suite 480
Washington, DC 20036

### Re: WCMA Line of Credit No. 749-07U96

Dear Mr. Shealey,

As you are aware, the above-numbered WCMA Line of Credit expires on July 31, 2001. Certain information which must be reviewed by us prior to renewal of the credit facility is not currently available. Consequently, as an accommodation to you, the WCMA Line of Credit has been temporarily extended to August 31, 2001.

While we are pleased to continue offering credit services to you on this extended basis, it is important that you obtain or prepare the following information for us as soon as possible:

(1) 12/31/00 Corporate Tax Returns
(2) 12/31/00 Annual Corporate Financial Statements
(3) 9/30/00 Quarterly Corporate Financial Statements

Should you have any questions, please contact me at (312) 499-3305.

Very truly yours,

Merrill Lynch Business Financial Services Inc.

By: _____
      Michael Curtis
      Relationship Analyst

cc: Chris Morse
      Kathryn Badger

Private Client Group

**Merrill Lynch Business
Financial Services Inc.**
222 North LaSalle Street
17th Floor
Chicago, Illinois 60601
312/499-3305
FAX 312/499-3258



August 28, 2001

Mr. Gerald Shealey
Executive Personnel Services Inc.
1990 M St., N.W., Suite 480
Washington, DC 20036

Re: Extension of WCMA Line of Credit No. 749-07U96

Dear Mr. Shealey,

It is a pleasure to inform you that we have approved an extension of the above-numbered WCMA Line of Credit for Executive Personnel Services Inc.

As extended, the new Maturity Date will be June 30, 2002, with all other terms and conditions remaining unchanged. In connection with this extension, a $3,500.00 fee will be charged to the WCMA Account.

Once again, we are pleased to provide you with this extension of your WCMA Line of Credit. Should you have any questions, please contact Christopher Morse at 202-659-7260.

Very truly yours,

Merrill Lynch Business Financial Services Inc.

By: _____
Michael Curtis
Relationship Manager

cc: Chris Morse
Kathryn Badger

Private Client Group

**Merrill Lynch Business
Financial Services Inc.**
222 North LaSalle Street
17th Floor
Chicago, Illinois 60601
(312) 499-3305
FAX: (312) 499-3256

**Merrill Lynch**

September 26, 2002

Mr. Gerald Shealey
Executive Personnel Services, Inc.
1990 M Street NW, Suite 480
Washington, DC 20036

**Re: WCMA Line of Credit No. 749-07U96**

Dear Mr. Shealey,

It is a pleasure to inform you that we have approved an extension of the above-numbered WCMA Line of Credit for Executive Personnel Services, Inc.

As extended, the new Maturity Date will be June 30, 2003, with all other terms and conditions remaining unchanged. In connection with this extension, a $3,500.00 fee will be charged to the WCMA Account.

Once again, we are pleased to provide you with this extension of your WCMA Line of Credit. Should you have any questions, please contact Christopher Morse at 202-659-7260.

Very truly yours,

Merrill Lynch Business Financial Services Inc.

By: *Michael Curtis* mm

Michael Curtis
Credit Manager

cc: Christopher Morse
    Kathryn Badger

DEC-18-2003 02:51        ERRILL LYNCH                    202 659 6000    P.02/07

Private Client Group

Merrill Lynch Business
Financial Services Inc.
222 North LaSalle Street
17th Floor
Chicago, Illinois 60601
(312) 269-1367
FAX: (312) 499-3256

**Merrill Lynch**

December 17, 2003

Executive Personnel Services, Inc.
1990 Street, NW, Suite 480
Washington, DC 20036

**Re: WCMA Line of Credit Increase and Extension**

Ladies & Gentlemen:

This Letter Agreement will serve to confirm certain agreements of Merrill Lynch Business Financial Services Inc. ("MLBFS") and Executive Personnel Services, Inc. ("Customer") with respect to: (i) that certain **WCMA AND TERM LOAN AND SECURITY AGREEMENT DATED AS OF JUNE 23, 1998** between MLBFS and Customer (including any previous amendments and extensions thereof), and (ii) all other agreements between MLBFS and Customer or any party who has guaranteed or provided collateral for Customer's obligations to MLBFS (a "Guarantor") in connection therewith (collectively, the "Loan Documents"). Capitalized terms used herein and not defined herein shall have the meaning set forth in the Loan Documents.

Subject to the terms hereof, effective as of the "Effective Date" (as defined below) the Loan Documents are hereby amended as follows:

(a) The "Maturity Date" of the WCMA Line of Credit is hereby extended to December 31, 2004.

(b) The "Maximum WCMA Line of Credit" is hereby increased to $900,000.00.

(c) The "Line Fee" for the period ending December 31, 2004, shall be $4,500.00. Customer hereby authorizes and directs MLBFS to charge said amount to WCMA Account No. 749-07U96 on or at any time after the Effective Date.

(d) The term "Interest Rate" shall mean a variable per annum rate of interest equal to the sum of 3.45% and the One-Month LIBOR. "One-Month LIBOR" shall mean, as of the date of any determination, the interest rate then most recently published in the "Money Rates" section of *The Wall Street Journal* as the one-month London Interbank Offered Rate. The Interest Rate will change as of the date of publication in *The Wall Street Journal* of a One-Month LIBOR that is different from that published on the preceding Business Day. In the event that *The Wall Street Journal* shall, for any reason, fail or cease to publish the One-Month LIBOR, MLBFS will choose a reasonably comparable index or source to use as the basis for the Interest Rate.

(e) Customer's "Tangible Net Worth", defined and calculated on Exhibit B attached hereto, shall at all times exceed $1,750,000.00.

(f) Customer's "Fixed Charge Coverage Ratio", defined and calculated on Exhibit B attached hereto, shall at all times exceed 1.25 to 1.

DEC-18-2003  02:51　　　　MERRILL LYNCH　　　　　　　　　202 659 6000　　　P.03/07

MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.

Executive Personnel Services, Inc.
December 17, 2003
Page No. 2

Except as expressly amended hereby, the Loan Documents shall continue in full force and effect upon all of their terms and conditions.

By his execution of this Letter Agreement, the below-named Guarantor hereby consents to the foregoing modifications to the Loan Documents, and hereby agrees that the "Obligations" under his Unconditional Guaranty and/or agreements providing collateral shall extend to and include the Obligations of Customer under the Loan Documents, as amended hereby.

Customer and said Guarantor acknowledge, warrant and agree, as a primary inducement to MLBFS to enter into this Agreement, that: (a) no Default or Event of Default has occurred and is continuing under the Loan Documents; (b) each of the warranties of Customer in the Loan Documents are true and correct as of the date hereof and shall be deemed remade as of the date hereof; (c) neither Customer nor said Guarantor have any claim against MLBFS or any of its affiliates arising out of or in connection with the Loan Documents or any other matter whatsoever; and (d) neither Customer nor said Guarantor have any defense to payment of any amounts owing, or any right of counterclaim for any reason under, the Loan Documents.

The obligations of MLBFS under this Letter Agreement are subject to its receipt and satisfaction with the following:

　　　　Evidence from the District of Columbia that Customer's corporate status is in good standing.

Provided that no Event of Default, or event which with the giving of notice, passage of time, or both, would constitute an Event of Default, shall then have occurred and be continuing under the terms of the Loan Documents, the amendments and agreements in this Letter Agreement will become effective on the date (the "Effective Date") upon which: (a) Customer and the Guarantor shall have executed and returned the duplicate copy of this Letter Agreement and the other document enclosed herewith; and (b) an officer of MLBFS shall have reviewed and approved this Letter Agreement and said other document as being consistent in all respects with the original internal authorization hereof.

Notwithstanding the foregoing, if Customer and the Guarantor do not execute and return the duplicate copy of this Letter Agreement and said other document within 14 days from the date hereof, or if for any other reason (other than the sole fault of MLBFS) the Effective Date shall not occur within said 14-day period, then all of said amendments and agreements will, at the sole option of MLBFS, be void.

Very truly yours,

Merrill Lynch Business Financial Services Inc.

By: _Kate Donovan_ _____
　　　Kate Donovan
　　　Associate Credit Manager

MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.

Executive Personnel Services, Inc.
December 17, 2003
Page No. 3

*Accepted:*

**Executive Personnel Services, Inc.**

By: _Gerald M. Shealey_

Printed Name: X _GERALD M. SHEALEY_

Title: X _PRESIDENT & CEO_

*Approved:*

X _Gerald M. Shealey_  _Gerald M. Shealey_

**Gerald M. Shealey**

 **Merrill Lynch**                                    **COMPLIANCE CERTIFICATE**

To:  Merrill Lynch Business Financial Services Inc. ("MLBFS")
     222 North LaSalle Street
     17th Floor
     Chicago, IL 60601

The undersigned, on behalf of EXECUTIVE PERSONNEL SERVICES, INC. ("Customer"), hereby certifies to MLBFS that: (i) he/she is an officer authorized to execute and deliver this certificate on behalf of Customer, and is familiar with the business and financial condition of the Customer; (ii) the financial statements delivered with this Certificate fairly present in all material respects the results of operations and financial condition of Customer; and (iii) to the best of my knowledge and belief, after reasonable investigation, each of the following statements is true and correct as of the date hereof: (a) no Event of Default, or event which with the giving of notice, passage of time, or both, would constitute and Event of Default, has occurred or is continuing, (b) no material adverse change in the financial condition of Customer has occurred or is continuing, and (c) the attached annexations, which are hereby incorporated herein by reference, are accurate, true and correct, and do not fail to state any material fact known (or should have been known) to Customer which would, but for the lapse of time, make any such statement or calculation false in any respect.

Date: 12/17/03

Gerald M. Shealey
_____
Signature

GERALD M. SHEALEY
_____
Printed Name

PRESIDENT & CEO
_____
Title

INSTRUCTIONS: IN ACCORDANCE WITH THE TERMS OF THE LOAN AGREEMENT (TO WHICH THIS ORIGINAL FORM OF COMPLIANCE CERTIFICATE IS ATTACHED AS EXHIBIT B), THIS COMPLIANCE CERTIFICATE AND THE ATTACHED ANNEXATIONS MUST BE COMPLETED BY YOU WITHIN 45 DAYS AFTER THE CLOSE OF EACH CALENDAR QUARTER. MLBFS EXPECTS YOU TO MAKE COPIES OF THIS ORIGINAL FORM OF COMPLIANCE CERTIFICATE AND SEND THEM QUARTERLY TO MLBFS WITHOUT NOTIFICATION OR REMINDER. ADDITIONAL COPIES WILL BE PROVIDED TO YOU UPON REQUEST.

## MINIMUM TANGIBLE NET WORTH ANNEX
## TO COMPLIANCE CERTIFICATE (Exhibit B to Loan Agreement)

Customer's "Tangible Net Worth" shall at all times exceed $1,750,000.00. For the purpose hereof, the term "Tangible Net Worth" shall mean Customer's net worth as shown on Customer's regular financial statements prepared in accordance with GAAP, but excluding an amount equal to: (i) any Intangible Assets, and (ii) any amounts now or hereafter directly or indirectly owing to Customer by officers, shareholders or affiliates of Customer. "Intangible Assets" shall mean the total amount of goodwill, patents, trade names, trade or service marks, copyrights, experimental expense, organization expense, unamortized debt discount and expense, the excess of cost of shares acquired over book value of related assets, and such other assets as are properly classified as "Intangible assets" of the Customer determined in accordance with GAAP:

As of _____ (insert Quarterly end date):


Beginning Total Net Worth                $_____

Distributions/advances/loans to
Shareholders, officers and affiliates (-)   $_____

Intangible Assets (-)                    $_____


Tangible Net Worth (=)                                  $_____



In Compliance?   Yes / No

DEC-18-2003 02:52          MERRILL LYNCH                    202 659 6000    P.06/07

## FIXED CHARGE COVERAGE RATIO ANNEX
## TO COMPLIANCE CERTIFICATE (Exhibit B to Loan Agreement)

Customer's "Fixed Charge Coverage Ratio" shall at all times exceed 1.25 to 1. For purposes hereof, "Fixed Charge Coverage Ratio" shall mean the ratio of: (a) income before interest (including payments in the nature of interest under capital leases), taxes, depreciation, amortization, and other similar non-cash charges, minus any internally financed capital expenditures, to (b) the sum of (i) any dividends and other distributions paid or payable to shareholders, any taxes paid in cash, and interest expense, as determined on a trailing 12-month basis, plus (ii) the aggregate principal scheduled to be paid or accrued over the next 12 month period and the aggregate rental under capital leases scheduled to be paid or accrued over the next 12 month period; all as set forth in Customer's regular Quarterly financial statements prepared in accordance with GAAP.

As of _____ (Insert Quarterly end date) for the prior trailing 12-month period:

|  |  |  |
|---|---|---|
| Net after-tax income | $_____ | |
| taxes (+) | $_____ | |
| interest (+) | $_____ | |
| depreciation (+) | $_____ | |
| amortization (+) | $_____ | |
| other non-cash charges (+) | $_____ | |
| internally financed capital expenditures (-) | $_____ | |
| (a) Total EBITDA (=) | | $_____ |
|  |  |  |
| div./distr. to owners (+) | $_____ | |
| taxes paid in cash (+) | $_____ | |
| interest expense (+) | $_____ | |
| scheduled principal next 12 months (+) | $_____ | |
| rents under capital leases next 12 months (+) | $_____ | |
| (b) Total fixed charges (=) | | $_____ |

Fixed Charge Coverage Ratio (a/b)            _____ to 1.

In Compliance?    Yes / No



Private Client Group

Merrill Lynch Busine:
Financial Services In:
222 North LaSalle Stre
17th Floor
Chicago, Illinois 60601

Tel: (877) BFS-0411

FAX: (312) 499-3254

January 09, 2006

Gerald Shealey
EXECUTIVE PERSONNEL SERVICES, INC.
1990 M STREET, N.W., SUITE 480
WASHINGTON, DC 20036

Re:   WCMA Account No. 51907C89

Dear Mr. Gerald Shealey,

Your Line of Credit was scheduled to expire on 12/31/2005. However, because we are waiting for certain financial statements from you in order to evaluate whether the Line of Credit can be renewed for a new term, we have temporarily extended the maturity date to 1/31/2006. In order to consider renewal of your Line of Credit, please send the following financial statements to our attention as soon as possible:

| Entity | Information Required | Frequency | Last Received | Next Required | Due By |
|--------|---------------------|-----------|---------------|---------------|--------|
| EXECUTIVE PERSONNEL SERVICES, INC. | CORP TAX RETURN | ANNUALLY | 12/31/2003 | 12/31/2004 | 05/01/2005 |
| EXECUTIVE PERSONNEL SERVICES, INC. | CORP F/S | QUARTERLY | 09/30/2004 | 12/31/2004 | 02/15/2005 |

All other terms and conditions of the Line of Credit are unaffected by this letter and will remain the same. This letter does not in any manner constitute any waiver of any of our rights, remedies or powers pursuant to the loan agreement.

Should you have any questions, or if there is any way we can be of assistance, please feel free to contact the BFS Loan Servicing Group at (877) BFS-0411.

Sincerely,

BFS Renewal Officer
Merrill Lynch Business Financial Services Inc.

cc:  Mr. Kevin Shaner
     Kathryn A Badger

Private Client Group

**Merrill Lynch Business Financial Services Inc.**
222 North LaSalle Street
17th Floor
Chicago, Illinois 60601
(312) 499-3071
FAX: (312) 750-6313

**Merrill Lynch**

March 2, 2006

Mr. Gerald Shealey
Executive Personnel Services, Inc.
1990 M Street NW, Suite 480
Washington, DC 20036

### Re: WCMA Line of Credit No. 749-07U96

Dear Mr. Shealey,

In order to grant you the time requested to submit the necessary past due financial information, Merrill Lynch Business Financial Services, Inc. ("MLBFS"), has approved an extension of the above-numbered WCMA Line of Credit for Executive Personnel Services, Inc.

As extended, the new Maturity Date will be March 31, 2006, with all other terms and conditions remaining unchanged. In connection with this extension, a $1,125.00 fee will be charged to the WCMA Account. This prorated fee covers the usage period spanning from the originally scheduled maturity date of December 31, 2005 through March 31, 2006.

As agreed upon, any subsequent extension of credit is contingent upon the timely receipt of financial statements, per the following schedule:

- Quarterly Financial Statement, dated 3/31/05, for Executive Personnel Services, Inc., no later than 3/6/06
- Quarterly Financial Statement, dated 6/30/05, for Executive Personnel Services, Inc., no later than 3/10/06
- Quarterly Financial Statement, dated 9/30/05, for Executive Personnel Services, Inc., no later than 3/17/06

In the event that any or all of the financial statements are not received by the respective dates specified, repayment of all funds outstanding on WCMA #749-07U96 will be due in full no later than March 31, 2006.

Once again, we are pleased to provide you with this extension of your WCMA Line of Credit. Should you have any questions, please contact me at 312-499-3071.

Very truly yours,

Merrill Lynch Business Financial Services Inc.

Sandip Amin
Assistant Vice President
Client Services Group

cc:     Kathryn Badger (via e-mail)

# Exhibit B

 



Ref. No. 9806660201

# UNCONDITIONAL GUARANTY

**FOR VALUE RECEIVED,** and in order to induce **MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.** ("MLBFS") to advance moneys or extend or continue to extend credit or lease property to or for the benefit of, or modify its credit relationship with, or enter into any other financial accommodations with **EXECUTIVE PERSONNEL SERVICES, INC.**, a corporation organized and existing under the laws of the District of Columbia (with any successor in interest, including, without limitation, any successor by merger or by operation of law, herein collectively referred to as "Customer") under: (a) that certain **WCMA AND TERM LOAN AND SECURITY AGREEMENT NO. 9806660201** between MLBFS and Customer (the "Loan Agreement"), (b) any "Additional Agreements", as that term is defined in the Loan Agreement, including, without limitation, the **WCMA NOTE** included with, and **TERM NOTE** incorporated by reference into, the Loan Agreement, and (c) all present and future amendments, restatements, supplements and other evidences of any extensions, increases, renewals, modifications and other changes of or to the Loan Agreement or Additional Agreements (collectively, the "Guaranteed Documents), the undersigned ("Guarantor") hereby unconditionally guarantees to MLBFS (subject, however, to the limitation of liability hereinafter set forth): (i) the prompt and full payment when due, by acceleration or otherwise, of all sums now or any time hereafter due from Customer to MLBFS under the Guaranteed Documents, (ii) the prompt, full and faithful performance and discharge by Customer of each and every other covenant and warranty of Customer set forth in the Guaranteed Documents, and (iii) the prompt and full payment and performance of all other indebtedness, liabilities and obligations of Customer to MLBFS, howsoever created or evidenced, and whether now existing or hereafter arising (collectively, the "Obligations"). Guarantor further agrees to pay all reasonable costs and expenses (including, but not limited to, court costs and reasonable attorneys' fees) paid or incurred by MLBFS in endeavoring to collect or enforce performance of any of the Obligations, or in enforcing this Guaranty. Guarantor acknowledges that MLBFS is relying on the execution and delivery of this Guaranty in advancing moneys to or extending or continuing to extend credit to or for the benefit of Customer.

This Guaranty is absolute, unconditional and continuing and shall remain in effect until all of the Obligations shall have been fully and indefeasibly paid, performed and discharged. Upon the occurrence and during the continuance of any Event of Default under the Guaranteed Documents, any or all of the indebtedness hereby guaranteed then existing shall, at the option of MLBFS, become immediately due and payable from Guarantor (it being understood, however, that upon the occurrence of any "Bankruptcy Event", as defined in the Guaranteed Documents, all such indebtedness shall automatically become due and payable without action on the part of MLBFS). Notwithstanding the occurrence of any such event, this Guaranty shall continue and remain in full force and effect. To the extent MLBFS receives payment with respect to the Obligations, and all or any part of such payment is subsequently invalidated, declared to be fraudulent or preferential, set aside, required to be repaid by MLBFS or is repaid by MLBFS pursuant to a settlement agreement, to a trustee, receiver or any other person or entity, whether under any Bankruptcy law or otherwise (a "Returned Payment"), this Guaranty shall continue to be effective or shall be reinstated, as the case may be, to the extent of such payment or repayment by MLBFS, and the indebtedness or part thereof intended to be satisfied by such Returned Payment shall be revived and continued in full force and effect as if said Returned Payment had not been made.

The liability of Guarantor hereunder shall in no event be affected or impaired by any of the following, any of which may be done or omitted by MLBFS from time to time, without notice to or the consent of Guarantor: (a) any renewals, amendments, modifications or supplements of or to any of the Guaranteed Documents, or any extensions, forbearances, compromises or releases of any of the Obligations or any of MLBFS' rights under any of the Guaranteed Documents; (b) any acceptance by MLBFS of any collateral or security for, or other guarantees of, any of the Obligations; (c) any failure, neglect or omission on the part of MLBFS to realize upon or protect any of the Obligations, or any collateral or security therefor, or to exercise any lien upon or right of appropriation of any moneys, credits or property of Customer or any other guarantor, possessed by or under the control of MLBFS or any of its affiliates, toward the liquidation or reduction of the Obligations; (d)

 

any invalidity, irregularity or unenforceability of all or any part of the Obligations, of any collateral security for the Obligations, or the Guaranteed Documents; (e) any application of payments or credits by MLBFS; (f) the granting of credit from time to time by MLBFS to Customer in excess of the amount set forth in the Guaranteed Documents; or (g) any other act of commission or omission of any kind or at any time upon the part of MLBFS or any of its affiliates or any of their respective employees or agents with respect to any matter whatsoever. MLBFS shall not be required at any time, as a condition of Guarantor's obligations hereunder, to resort to payment from Customer or other persons or entities whatsoever, or any of their properties or estates, or resort to any collateral or pursue or exhaust any other rights or remedies whatsoever.

No release or discharge in whole or in part of any other guarantor of the Obligations shall release or discharge Guarantor or any other guarantor, unless and until all of the Obligations shall have been indefeasibly fully paid and discharged. Guarantor expressly waives presentment, protest, demand, notice of dishonor or default, notice of acceptance of this Guaranty, notice of advancement of funds under the Guaranteed Documents and all other notices and formalities to which Customer or Guarantor might be entitled, by statute or otherwise. and, so long as there are any Obligations or MLBFS is committed to extend credit to Customer, Guarantor waives any right to revoke or terminate this Guaranty without the express written consent of MLBFS.

So long as there are any Obligations, Guarantor shall not have any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right, or remedy of MLBFS against Customer or any security which MLBFS now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law, or otherwise.

MLBFS is hereby irrevocably authorized by Guarantor at any time during the continuance of an Event of Default under the Loan Agreement or any other of the Guaranteed Documents or in respect of any of the Obligations, in its sole discretion and without demand or notice of any kind, to appropriate, hold, set off and apply toward the payment of any amount due hereunder, in such order of application as MLBFS may elect, all cash, credits, deposits, accounts, securities and any other property of Guarantor which is in transit to or in the possession, custody or control of MLBFS or Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S"), or any of their respective agents, bailees or affiliates, including, without limitation, all securities accounts with MLPF&S and all cash, securities and other financial assets therein or controlled thereby, and all proceeds thereof. Guarantor hereby collaterally assigns and grants to MLBFS a continuing security interest in all such property as additional security for the Obligations. Upon the occurrence and during the continuance of an Event of Default, MLBFS shall have all rights in such property available to collateral assignees and secured parties under all applicable laws, including, without limitation, the Uniform Commercial Code.

Guarantor agrees to furnish to MLBFS such financial information concerning Guarantor as may be required by any of the Guaranteed Documents or as MLBFS may otherwise from time to time reasonably request. Guarantor further hereby irrevocably authorizes MLBFS and each of its affiliates, including without limitation MLPF&S, to at any time (whether or not an Event of Default shall have occurred) obtain from and disclose to each other any and all financial and other information about Guarantor.

Guarantor warrants and agrees that: (a) unless clearly stated or noted, no material assets shown on any financial statements of Guarantor heretofore or hereafter furnished to MLBFS are or will be held in an irrevocable trust, pension trust, retirement trust, IRA or other trust or form of ownership exempt from execution by creditors of Guarantor; and, (b) except upon the prior written consent of MLBFS, which consent will not be unreasonably withheld, Guarantor will not hereafter transfer any material assets of Guarantor to any trust or third party if the effect thereof will be to cause such assets to be exempt from execution by creditors of Guarantor (excluding, however, normal and reasonable contributions to pension plans, retirement plans, etc., and IRA rollovers).

No delay on the part of MLBFS in the exercise of any right or remedy under the Guaranteed Documents, this Guaranty or any other agreement shall operate as a waiver thereof, and, without limiting the foregoing, no delay in the enforcement of any security interest, and no single or partial exercise by MLBFS of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy. This

 

Guaranty may be executed in any number of counterparts, each of which counterparts, once they are executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Guaranty. This Guaranty shall be binding upon Guarantor and Guarantor's heirs and personal representatives, and shall inure to the benefit of MLBFS and its successors and assigns.

This Guaranty shall be governed by the laws of the State of Illinois. WITHOUT LIMITING THE RIGHT OF MLBFS TO ENFORCE THIS GUARANTY IN ANY JURISDICTION AND VENUE PERMITTED BY APPLICABLE LAW, GUARANTOR AGREES THAT THIS GUARANTY MAY AT THE OPTION OF MLBFS BE ENFORCED BY MLBFS IN ANY JURISDICTION AND VENUE IN WHICH ANY OF THE GUARANTEED DOCUMENTS MAY BE ENFORCED. GUARANTOR AND MLBFS HEREBY EACH EXPRESSLY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES AGAINST THE OTHER PARTY IN ANY WAY RELATED TO OR ARISING OUT OF THIS GUARANTY OR THE OBLIGATIONS. Wherever possible each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty. No modification or waiver of any of the provisions of this Guaranty shall be effective unless in writing and signed by Guarantor and an officer of MLBFS.

Dated as of June 23, 1998.

Guarantor:

_Gerald M. Shealey_

GERALD M. SHEALEY

Address:

504 Scenic Way
Great Falls, VA  22066

Witness: x _Gregg M. Brown_

Printed Name: x _GREGORY M. BROWN_

# Exhibit C

Private Client Group

**Merrill Lynch Business
Financial Services Inc.**
222 N. LaSalle
17th Floor
Chicago, Illinois 60601
Tel: 312-750-6341
Fax: 312-750-6313

**Sandip Amin**
Loan Quality Officer

**Merrill Lynch**

February 28, 2006

VIA UPS Next Day Air and First Class Mail

Mr. Doug Rice
Executive Personnel Services, Inc.
1990 M Street, N.W. Suite 480
Washington, DC 20036

## NOTICE OF DEFAULT AND DEMAND FOR PAYMENT

Ladies and Gentlemen:

This letter refers to certain agreements between Merrill Lynch Business Financial Services Inc. ("MLBFS") and Executive Personnel Services, Inc. ("Customer"), with respect to the following:

(i)    that certain WCMA and Term Loan and Security Agreement No. 9806660201 dated as of June 23, 1998, between MLBFS and Customer, including any amendments or extensions thereto (the "Loan Agreement");

(ii)    all other agreements between MLBFS and Customer, or any other party who has guaranteed or provided collateral (a "Guarantor", or, if plural, "Guarantors") for Customer's obligations in connection therewith (the "Additional Agreements").

For purposes of this letter, (i) Customer and Guarantor(s) are collectively referred to as the "Obligors", and (ii) the Loan Agreement and Additional Agreements are collectively referred to as the "Loan Documents." Capitalized terms used herein and not defined herein shall have the meaning set forth in the Loan Documents.

On December 30, 2005, MLBFS sent to Obligors a demand notice ("Demand Notice"), which, among other things, (a) informed Obligors that MLBFS had not received certain financial information required under the Loan Documents, (b) made demand upon Obligors to submit to MLBFS the past due financial information by 5PM CST January 16, 2006, and (c) informed Obligors that if they failed to comply with the Demand Notice, one or more Events of Default would occur under the Loan Documents.

Obligors failed to comply with the Demand Notice, resulting in the occurrence of one or more Events of Default under the Loan Documents. As a consequence of the occurrence of the Events of Default, effective immediately (a) WCMA and Term Loan and Security Agreement No. 9806660201, (b) all Obligations under the Loan Documents have been accelerated, rendering such Obligations immediately due and payable, (c) MLBFS will return any debits (except for debits due to the posting of accrued interest) that Customer attempts to post to the WCMA Line of Credit, and (d) interest will accrue on all Obligations under the WCMA Loan Agreement at the Default Interest Rate.

Demand is hereby made upon Obligors to fully repay all Obligations under the Loan Documents by 5PM CST March 7, 2006. As of the close of business February 27, 2006, $ 794,108.19 is outstanding under the WCMA Loan Agreement, consisting of (a)$789,060.07 principal and $5,048.12 of accrued interest. Additional interest and other charges under the Loan Documents will continue to accrue on and after the date of this letter, thereby increasing the Obligations owed.

Dm3

MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.

If Obligors fail to comply with the demand made herein, MLBFS will exercise its rights under the Loan Documents and applicable law, including, but not limited to (a) assessing a Late Charge in the amount of 5% of the outstanding Obligations under the Loan Agreement and (b) immediately initiating legal proceedings.

This letter: (i) does not in any manner constitute any waiver of either (a) any of our rights, remedies or powers pursuant to the Loan Documents, or any other agreement, document, or instrument or applicable law, or (b) any Event of Default (howsoever defined) under the Loan Documents; and (ii) is not to be construed as an agreement by MLBFS to allow any cure periods at a later date not specifically provided for in the Loan Documents or any other applicable agreement, document or instrument.

I trust that you will give this matter your foremost attention.

Sincerely,


Sandip Amin
Loan Quality Officer


cc:   Gerald M. Shealey
      504 Scenic Way
      Great Falls, VA 22066
      (Via UPS Next Day Air and First Class Mail)

      Kathryn A. Badger, Financial Advisor (Via E-mail)

Dm3

# Exhibit D

Private Client Group

**Merrill Lynch Business
Financial Services Inc.**
222 North LaSalle Street
17th Floor
Chicago, IL 60601
Tel: (312) 269-4461
Fax: (312) 499-3252

**Bill Sardegna
Assistant Vice President**

June 12, 2006

**⚮ Merrill Lynch**

**VIA UPS OVERNIGHT AND FIRST CLASS MAIL**

Executive Personnel Services, Inc.
1015 18th Street, NW Suite 710
Washington, DC, 20036

Attn: Mr. Gerald Shealey

## NOTICE OF DEFAULT AND DEMAND FOR PAYMENT

Ladies and Gentlemen:

This letter refers to certain credit facilities and related transactions between Merrill Lynch Business Financial Services Inc. ("MLBFS") and Executive Personnel Services, Inc. ("Customer") and Gerald M. Shealey ("Shealey") with respect to:

(i)    a certain **WCMA AND TERM LOAN AND SECURITY AGREEMENT NO. 9806660201** (currently WCMA 519-07C89) dated as of June 23, 1998 between MLBFS and Customer, including any extensions or amendments thereto (the "WCMA Loan Agreement");

(ii)    a certain **UNCONDITIONAL GUARANTY** dated as of June 23, 1998 and given to MLBFS by Shealey.

(iii)    all other agreements between MLBFS, Customer, Shealey or any party who has guaranteed or provided collateral to MLBFS (a "Guarantor", or if plural, "Guarantors") for Customer's obligations to MLBFS in connection therewith (the "Other Agreements").

For purposes of this letter, (i) the WCMA Loan Agreement and Other Agreements will collectively be referred to as the "Loan Documents", and (ii) Customer, Shealey, and Guarantors will collectively be referred to as the "Obligors". Capitalized terms used herein and not defined herein shall have the meaning set forth in the Loan Documents.

The Loan Documents expired by their terms April 30, 2006. As a result, one or more Events of Default have occurred and are continuing under the Loan Documents. Consequently, pursuant to the Loan Documents, MLBFS has accelerated all Obligations under the Loan Documents, making such Obligations immediately due and payable.

As of the open of business on June 9, 2006, the outstanding indebtedness totals **$899,053.00** consisting of $896,713.48 in principal and $2,339.52 in accrued and unpaid interest with respect to WCMA Line of Credit No. 519-07C89. Additional interest and other charges allowable under the Loan Documents will continued to accrue on and after the date of this letter. **Demand is hereby made upon Obligors, and each of them, to fully repay all amounts outstanding under the Loan Documents by 4:30 p.m. Central Standard Time on June 19, 2006.**

If Obligors fail to fully repay all Obligations under the Loan Documents by 4:30PM Central Standard Time on June 19, 2006, then Obligors are further notified that the 5.0% late fee will apply under the Loan Documents. MLBFS may have no alternative but to take such lawful action as may be necessary to protect our rights in this matter, including but not limited to, legal proceedings to enforce our rights under the Loan Documents and/or applicable law.

This letter (i) does not in any manner constitute any waiver of either (a) any of our rights, remedies or powers pursuant to the Loan Documents, or any other agreement, document or instrument or applicable law, or (b) any Event of Default (howsoever defined) under the Loan Documents, and (ii) is not to be construed as an agreement by MLBFS to allow

MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.

Executive Personnel Services, Inc.
June 12, 2006

any cure periods at a later date not specifically provided for in the Loan Documents or any other applicable agreement, document or instrument.

Please respond in writing as to an immediate strategy for adhereing to the above matter.

Sincerely,

Bill Sardegna
Assistant Vice President


cc:   Gerald M. Shealey
      504 Scenic Way
      Great Falls, VA 22066
      (Via UPS Next Day Air)

      Kathryn A. Badger, MLPFS (Via Electronic Mail)

      Jennifer Bernstein, MLBFS (Via Electronic Mail)

# Exhibit E

Doc# 2004072159

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone (800) 331-3282 · Fax (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO: (Name and Mailing Address)    511103 IMERRALC

```
┌─────────────────────────────────────────────┐
│  UCC Direct Services                          │
│  P.O. Box 29071              5837538.1        │
│  Glendale, CA 91209-9071     DCDC             │
└─────────────────────────────────────────────┘
```

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE #<br>2003090452  07-15-03  SS  DC | 1b. This FINANCING STATEMENT AMENDMENT is<br>to be filed [for record] (or recorded) in the<br>REAL ESTATE RECORDS. |

2. [ ] TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. [ ] CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. [ ] ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects [ ] Debtor or [ ] Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Executive Personnel Services, Inc. | | | | |
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

7. CHANGED (NEW OR ADDED) INFORMATION:

| 7a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 7d. TAX ID#: SSN or EIN  ADD'L INFO RE: ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | [ ] NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral [ ] deleted or [ ] added, or give entire [X] restated collateral description, or describe collateral [ ] assigned.

All Accounts, Chattel Paper, Contract Rights, General Intangibles, Deposit Accounts, Documents, Instruments, Investment Property and Financial Assets of Debtor, howsoever arising, whether now owned or existing or hereafter acquired or arising, and wherever located; together with all books and records (including computer records) directly related thereto, and all proceeds thereof. In accordance with the terms of a certain Loan Agreement between Debtor and Secured Party, Debtor has agreed that except for certain "Permitted Liens" (as defined in said Loan Agreement), Debtor will not further encumber any of the above property without the prior written consent of Secured Party. This Financing Statement is being filed as a restatement of the in lieu of the Continuation Statement (s) for the following previously filed Financing Statement(s) each of which remains effective. (File Number, Date, State, County (if applicable). Designation 9807247625, 07-24-1998 VA State Corporation Commission, Original

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Merrill Lynch Business Financial Services Inc. | | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
5837538.1 Executive Personnel Services, Inc.  014122/las InlIeu project

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

Prepared by UCC Direct Services, P.O. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

ATTACHMENT 01

directly related thereto, and all proceeds thereof.

In accordance with the terms of a certain Loan Agreement between Debtor and Secured Party, Debtor has agreed that except for certain "Permitted Liens" (as defined in said Loan Agreement), Debtor will not further encumber any of the above property without the prior written consent of Secured Party.

CSC REFERENCE #//26800023//96-601802//1//2

Page 1

Vol/Page# /
Doc#: 2003090152
Date: 07/15/2003
Time: 09:25:01 AM

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A NAME & PHONE OF CONTACT AT FILER [optional]
Phone (800) 331 3282          Fax (818) 662 4141

B SEND ACKNOWLEDGEMENT TO (Name and Address)          511103 IMERRILL

```
UCC Direct Services          5837538
P O Box 29071
Glendale, CA 91209-9071      DCDC
```

1 DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Executive Personnel Services, Inc | | | | |
| 1b INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 1c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1990 M Street N W Suite 480 | Washington | DC | 20036 | |

| 1d TAX ID # SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e TYPE OF ORGANIZATION | 1f JURISDICTION OF ORGANIZATION | 1g ORGANIZATIONAL ID # if any | |
|---|---|---|---|---|---|
| 52-1654561 | | Corporation | DIST OF COLUMBIA | 894383 | ☐ NONE |

2 ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 2c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d TAX ID # SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e TYPE OF ORGANIZATION | 2f JURISDICTION OF ORGANIZATION | 2g ORGANIZATIONAL ID # if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

3 SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Merrill Lynch Business Financial Services Inc | | | | |
| 3b INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 3c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 222 N LaSalle Street | Chicago | IL | 60601 | |

4 This FINANCING STATEMENT covers the following collateral

ALL ACCOUNTS CHATTEL PAPER CONTRACT RIGHTS INVENTORY EQUIPMENT FIXTURES GENERAL INTANGIBLES DEPOSIT ACCOUNTS DOCUMENTS INSTRUMENTS INVESTMENT PROPERTY AND FINANCIAL ASSETS OF DEBTOR HOWSOEVER ARISING WHETHER NOW OWNED OR EXISTING OR HEREAFTER ACQUIRED OR ARISING AND WHEREVER LOCATED TOGETHER WITH ALL PARTS THEREOF (INCLUDING SPARE PARTS) ALL ACCESSORIES AND ACCESSIONS THERETO ALL PROCEEDS THEREOF ALL BOOKS AND RECORDS (INCLUDING COMPUTER RECORDS) DIRECTLY RELATED THERETO ALL PROCEEDS THEREOF (INCLUDING WITHOUT LIMITATION PROCEEDS IN THE FORM OF ACCOUNTS AND INSURANCE/PROCEEDS) IN ACCORDANCE WITH THE TERMS OF A CERTAIN LOAN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY DEBTOR HAS AGREED THAT EXCEPT FOR CERTAIN "PERMITTED LIENS" (AS DEFINED IN SAID LOAN AGREEMENT) DEBTOR WILL NOT FURTHER ENCUMBER ANY OF THE ABOVE PROPERTY WITHOUT THE PRIOR WRITTEN CONSENT OF SECURED PARTY 014124 lo

This Financing Statement is being filed in lieu of a Continuation Statement(s) for the following previously filed Financing Statement(s), each of which remains effective

(File Number  Date  State  County (if applicable)  Designation)
980012992  07-24-1998  CC DC District of Columbia  Original
9807247825  07-24-1998  CC VA State Corporation Commission  Original
2003057887  05-13-2003  CC DC District of Columbia  Continuation
030506-7087-7  05 06-2003  CC VA State Corporation Commission  Continuation

| 5 ALTERNATIVE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG LIEN | ☐ NON UCC FILING |
|---|---|---|---|---|---|---|
| 6 ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum [if applicable] | | 7 Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

8 OPTIONAL FILER REFERENCE DATA
5837538                                    Executive Personnel Services, Inc          014124 lo

Prepared by UCC Direct Services P O Box 29071
Glendale CA 91209 9071 Tel (800) 331 3282

Doc# 2003857687

**UCC FINANCING STATEMENT AMENDMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone (800) 331-3282    Fax (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO: (Name and Mailing Address)    311103 IMERRILL

UCC Direct Services          5788296.1
P.O. Box 29071
Glendale, CA 91209-9071      DCDC

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
980012992 '07-24-98 SS DC

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION - Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ CONTINUATION - Effectiveness of the Financing Statement identified above with respect to the security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial) Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

6. CURRENT RECORD INFORMATION:
6a. ORGANIZATION'S NAME
Executive Personnel Services, Inc.

OR

6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7. CHANGED (NEW) OR ADDED INFORMATION:
7a. ORGANIZATION'S NAME

OR

7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

7d. TAX ID #: SSN or EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment).
9a. ORGANIZATION'S NAME
Merrill Lynch Business Financial Services Inc.

OR

9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

10. OPTIONAL FILER REFERENCE DATA
5788296.1 Executive Personnel Services, Inc.  014124.ka

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

Prepared by UCC Direct Services, P.A. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

Doc# 2003057887

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone (800) 331-3282    Fax (818) 662-4141

B. SEND ACKNOWLEDGMENT TO: (Name and Mailing Address)    511103 3MERRILL

UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

5788296.1

DCDC

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
9800012992  07-24-98  SS  DC

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION:

3. ☒ CONTINUATION:

4. ☐ ASSIGNMENT (full or partial):

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record.

6. CURRENT RECORD INFORMATION:
6a. ORGANIZATION'S NAME
Executive Personnel Services, Inc.

OR  6b. INDIVIDUAL'S LAST NAME    FIRST NAME    MIDDLE NAME    SUFFIX

7. CHANGED (NEW) OR ADDED INFORMATION:
7a. ORGANIZATION'S NAME

OR  7b. INDIVIDUAL'S LAST NAME    FIRST NAME    MIDDLE NAME    SUFFIX

7c. MAILING ADDRESS    CITY    STATE    POSTAL CODE    COUNTRY

7d. TAX ID#: SSN or EIN  ADD'L INFO RE ORGANIZATION DEBTOR  7e. TYPE OF ORGANIZATION  7f. JURISDICTION OF ORGANIZATION  7g. ORGANIZATIONAL ID #, if any

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT
9a. ORGANIZATION'S NAME
Merrill Lynch Business Financial Services Inc.

OR  9b. INDIVIDUAL'S LAST NAME    FIRST NAME    MIDDLE NAME    SUFFIX

10. OPTIONAL FILER REFERENCE DATA
5788296.1 Executive Personnel Services, Inc.  014124 lo

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)